FRANK NOLAN, ADMINISTRATOR, APPELLANT, V. YOUNG MEN'S CHRISTIAN ASSOCIATION ET AL., APPELLEES.

FILED JULY 12, 1932. No. 28234.

*Wilmer B. Comstock,* for appellant.

*Chambers & Holland* and *Hall, Cline & Williams, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

HASTINGS, District Judge.

On November 12, 1930, Rollin Nolan, 12 years of age, was accidentally drowned while engaged with a troop of Boy Scouts in using the swimming pool of the Young Men's Christian Association of Lincoln, Nebraska. Frank Nolan, as administrator of the estate of Rollin Nolan, deceased, brought this action against the Y. M. C. A. and Franklin Flagler to recover damages alleged to have been sustained by the death of Nolan.

Plaintiff alleged that the death of Nolan was caused by the negligence of the defendants, alleging eight specific acts of negligence.

The defendants filed separate answers. The defendant, Y. M. C. A., answered and admitted owning the swimming pool in its building in Lincoln, Nebraska, and alleged that said Rollin Nolan was on its premises and making use of the swimming pool under the exclusive care, custody and control of the Boy Scouts of America, and under the immediate direction, care, custody and control of the defendant, Franklin Flagler. Defendant further alleged that it is a corporation not organized for profit and is organized as a religious and charitable corporation under the laws of Nebraska; that the swimming pool is maintained by the defendant as part of the work for which it was organized and is not operated for gain or profit.

The defendant, Franklin Flagler, admitted that the defendant, the Y. M. C. A., maintained a swimming pool in the city of Lincoln as alleged, and that plaintiff's decedent came to his death in or about said pool from drowning or from accidental injuries or both. Defendant, further answering, alleged that, in taking plaintiff's decedent to the swimming pool, defendant acted without pay under the direction of the Boy Scouts of America and in

furtherance of the purpose of said Boy Scouts; that the Boy Scouts of America is an eleemosynary institution incorporated by an act of the congress of the United States of America and a charitable institution not engaged in business for profit or gain; that all arrangements for the use of said pool were made by said Boy Scouts and that life guards were furnished and maintained by said Boy Scouts. Defendant denied generally the other allegations of plaintiff's petition, and alleged that the decedent, Rollin Nolan, was guilty of contributory negligence directly contributing to and causing his death. The reply was a general denial.

At the close of the evidence the defendants, by separate motions, moved for a directed verdict. The motions were sustained and the jury instructed to return a verdict for both defendants. Judgment was entered on the verdict and plaintiff appeals.

The principal assignment of error relied upon by the plaintiff is that there was evidence of actionable negligence sufficient to require the submission of the case to the jury. There is no conflict in the evidence upon the issues of negligence. "Issues of negligence are questions for the jury only when the evidence is sufficient to sustain a finding of negligence." *Kelly v. Gagnon,* 121 Neb. 113. It is the duty of the court in a suit for damages, based upon negligence, to direct a verdict for the defendant upon the conclusion of all the testimony if the evidence is insufficient to support a verdict for the plaintiff. *De Griselles v. Gans,* 116 Neb. 835.

Whether there was sufficient evidence of negligence to support a verdict in favor of the plaintiff requires a review of the evidence. The essential facts established by the evidence are: That plaintiff's decedent, while not a member of the Boy Scouts of America, had made written application, with the written approval of his father, to become a member of that organization about a month prior to his death. The Boy Scouts of America is a benevolent and charitable corporation organized under the

laws of the United States. The purpose of the organization is building character, training in citizenship, and in developing physical fitness in boys between the ages of 12 and 18 years. It operates through troops, each troop being under the charge of a scout master and each troop being under the jurisdiction of an institution, such as a church or school. The troops meet weekly under the direction of a scout master for normal scout activities, which consist, in part, of swimming, hiking, nature study, first aid, axemanship and camping. As an applicant for membership, decedent was attached to what was known as "Troop 19" which had for its headquarters the Trinity Methodist Church in Lincoln. It was necessary before plaintiff's decedent could become a scout to pass certain tests. He was in the process of taking these tests at the time of his death. From the time of making his application he had been meeting with the troop to which he was attached each week and had been at the swimming pool with the troop prior to the time of his death. Troop 19 was under the supervision of the defendant, Flagler, who had been its scout master, without compensation, for over a year prior to the time of the accident. Those in authority in the Boy Scouts had made arrangements with the defendant Y. M. C. A. for the exclusive use of the swimming pool on Wednesday evenings from 6:30 to 9 o'clock, for which no charge was made. Those of the scouts who did not bring their own towels paid 5 cents for the use of one. Young Nolan on the evening of the accident did not bring a towel and paid 5 cents for one. It was a part of the arrangement that each troop, while making use of the swimming pool, should be in charge of its scout master. The scouts were to furnish and did furnish life guards and swimming instructors, who served gratuitously. On the evening of the accident the guards were Marion Hestbeck and Alba Briggs. Hestbeck had been acting as life guard, instructor and examiner for the scouts for four years; he was a Red Cross life saver for five years and qualified to give life saving examinations and swimming

instructions to others. Briggs, his assistant, had worked in boy scout camps for three years, acted as assistant for three years, passed the life saving examinations given by the boy scouts and held the Red Cross senior life saving award. Both are shown to have been thoroughly competent life guards and swimming instructors. The qualifications of these guards were known to the defendant Y. M. C. A., and had been approved by it as qualified lifesaving guards and swimming instructors.

On the evening of the accident Troop 19 met at the Trinity Methodist Church and was informed that those who did not desire to go swimming could stay at the church and receive instruction, and that, after the swimming was over, all would meet at the church and a meeting would be held. Eleven of the boys, including Rollin Nolan, expressed their desire to go swimming. Nolan and two of the other boys went to the swimming pool on their bicycles. The other eight, accompanied by the defendant Flagler, walked from the church to the swimming pool. They arrived at the Y. M. C. A. about a quarter to seven and the boys went into the locker room and disrobed and from there into the shower and then into the pool. The pool maintained by the Y. M. C. A. was built of white tile, was 60 feet long and 20 feet wide. At the east end of the pool and for some distance towards the west the water was shallow, for the use of those who could not swim. The room, in which the swimming pool is located, was lighted by 12 lights of 75 watt power each, two of the lights had been broken on the afternoon of the accident and the room was not as light as usual, although well lighted. It appears that it was necessary, every 48 hours, to use chlorine to purify the water in the pool to keep it free from colon bacilli. The custom was to put this chemical in the water at noon. On the day of the accident more than usual of the chemical had been put in the water rendering it a little more cloudy than ordinarily and more difficult to see the bottom. The part of the pool which the boys who could not swim were to use was about two and a half feet deep at the east end and

gradually deeper toward the west end, where it was of the depth of about eight feet. The decedent was among those who could not swim and was noticed by one of the boys toward the east end of the pool, where the water was about to his waist, about ten minutes after the troop entered the pool. So far as it is disclosed, this is the last time he was seen alive. Of all the persons present no one saw young Nolan when he disappeared. When and how he got into the deep water at the west end of the pool, where his body was found, is not disclosed.

At the time the boys out of Troop 19 entered the pool another scout troop went in. The other troop was in charge of a scout master. The number of boys in the pool from 7 to 7:30 o'clock was about 25. During all of that time both of the scout masters and two life guards were present. There is nothing in the evidence to indicate that any of the guards or the scout masters were inattentive to their duties. The boys all left the pool at about the same time. Before leaving, the defendant Flagler looked to see if all the boys had left the pool; he observed none there, but did observe the life guards inspecting the pool, as was their custom, before allowing another troop in. As soon as the boys who did not have wheels were dressed they and the defendant Flagler left for the church. Two of the boys who had come to the pool on their wheels with young Nolan dressed and stopped for a few moments in a room where bowling was going on, then went out to get their wheels to go to the church, and noticed the bicycle belonging to young Nolan where he had left it on his arrival. They immediately went back into the building and to the locker and found his clothes there and notified the young man in charge that Nolan was missing, and with him went directly from there to the swimming pool, where they informed the guard, Hestbeck, of that fact. Hestbeck immediately went along the north edge of the pool and, at the point where the water was deepest, he saw a dark object at the bottom of the pool. Hestbeck immediately went in, found this dark object was the body

of the decedent and brought the body out. It was not over 30 seconds from the time Hestbeck was notified until the body of Nolan was out of the pool. Immediately steps were taken to resuscitate him. A doctor was sent for, whose office was near, and came at once and administered a restorative. Approved methods to resuscitate him were kept up for an hour and a half or two hours without avail.

It is contended that the defendant Y. M. C. A. was negligent in that it failed and omitted to furnish any servants, employees, guards or attendants to warn, assist, instruct or supervise plaintiff's decedent. We have held:

"It is the duty of a bathing resort keeper who grants privileges for compensation to make reasonable provision to guard against accidents liable to befall bathers who indulge in aquatic sports for which he has provided facilities and this may require an attendant to render assistance.

"Ordinary care to provide a reasonably sufficient number of attendants for the protection of bathers at a public bathing resort conducted for private gain is a standard of duty in that respect.

"The duty to exercise ordinary care to protect patrons of a public bathing resort conducted for private gain does not make the proprietor an insurer of their safety." *Lyman v. Hall,* 117 Neb. 140.

No higher standard of duty is imposed upon the defendant Y. M. C. A., who granted the privilege of using its pool without compensation for a laudable purpose, than upon the keepers of bathing resorts for gain.

Competent guards and attendants were furnished with the approval of the Y. M. C. A. The fact that the Y. M. C. A. did not directly furnish the guards or attendants is not material nor is it evidence of negligence. There is no proof that the number of guards and attendants was insufficient. Taking into consideration the size of the pool the evidence establishes ample guards were provided.

In this connection it is also urged that the guards and the defendant Flagler failed and omitted to keep a proper

lookout to observe the peril in which Nolan had become involved. This contention is based upon the failure to notice the disappearance of Nolan and to miss him thereafter. Under the circumstances disclosed by the evidence such omission was not actionable negligence. In *Lyman v. Hall, supra,* in passing upon a similar contention it is said:

"Where many swimmers are engaged in aquatic sports in the same pool, it is common knowledge that divers disappear and return at other places without giving occasion for alarm or rescue. In the present instance no one knew exactly when or where the bather disappeared. Without resorting to speculation or conjecture the jury could not properly find that, except for the failure of the guard to miss the bather and to notice that he did not promptly reappear, there would have been no loss of life."

What is there said applies with equal force to the facts in the instant case.

When decedent was removed from the water he had two bruises upon his forehead, which might indicate that he had slipped and fallen against the edge of the pool as he went into the water and was in such a dazed condition as to prevent any outcry from him and to cause him to sink to the bottom of the pool without struggling so as to attract attention to his plight. This may account for the fact that he was not seen by the guards and scout masters and the numerous boys in and around the pool as he sank beneath the water to his death.

The contention is made that, owing to the fact that the water was darker than usual, caused by the use of more than the ordinary amount of chemical, and the absence of two lights, it was impossible, or more nearly so than usual, to see Nolan after he sank beneath the surface of the water and hindered his rescue before life was extinct, and that this was evidence of negligence and some proof that it was the proximate cause of his death. The proof is that, when notice was given that Nolan was missing, the guard was able to see his body at the bottom of the

pool and promptly recover it. There is no proof that, owing to the condition of the water and the lights, the body of a person could not be seen sinking beneath the surface of the water, nor that it would hinder rescue before life was extinct. To say that the defendants or either of them were guilty of actionable negligence would be to assume that, but for the absence of two of the lights and the discoloration of the water, young Nolan would have been seen as he sank beneath the surface of the water or his body seen upon the bottom of the pool in time to have rescued him before death. Without a resort to speculation or conjecture no such conclusion can be reached. It finds no support in the evidence nor any reasonable inference to be drawn therefrom.

It is insisted that the defendant Flagler should have ascertained before he left for the church that Nolan was missing, that his failure to do so was negligence. There had been nothing that had occurred that would indicate to any reasonable person that any of the boys might be missing. Flagler looked before he left the room and saw none of the boys in or around the swimming pool. As an ordinarily prudent man he had the right to assume, under the circumstances disclosed by the evidence, that none of the boys were missing. Had he counted the boys, as counsel urges that he ought to have done, and ascertained that young Nolan was missing, there is nothing in the evidence that indicates that he could have been rescued before life was extinct. Neither is negligence shown on the part of the defandant Flagler in taking young Nolan, in company with other members of his troop, to the pool and permitting him to take part in one of the activities of the Boy Scouts. The evidence shows that the pool was a reasonably safe place to take them for that purpose.

Regretable as the death of this boy is, we are constrained to hold that the evidence in this case fails to establish actionable negligence on the part of the defendants or either of them in respect to any of the acts of negligence alleged by plaintiff.

Having taken this view of the case, we do not find it necessary to determine whether the evidence is sufficient to establish that the defendant the Y. M. C. A. was a charitable and religious organization and as such exempt from liability for the acts of negligence of its officers, agents and servants.

The trial court was right in directing a verdict and the judgment is

AFFIRMED.