JOSEPH P. LABBE *vs.* HILL BROTHERS, INC.

FEBRUARY 6, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

Roberts, J. This is an action of trespass on the case for negligence brought to recover damages for personal injuries alleged to have been sustained by the plaintiff during the unloading of piling from a motor carrier owned by the defendant. The case was tried to a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiff in the amount of $30,378.15. The trial justice thereafter denied the defendant's motion for a new trial, and the case is before this court solely on the defendant's exception to the denial of that motion. His other exceptions, being neither briefed nor argued, are deemed to be waived.

It appears from the record that on June 15, 1960 plaintiff was employed by a contractor engaged in the construction of a number of oil storage tanks on a tract of land in Providence lying east of Allens avenue and south of Henderson street. At that time the foundations upon which these tanks were to be built were under construction, which involved the driving of piles in substantial numbers. The defendant was engaged in the delivery of piling to the job site and for that purpose used a certain vehicle known as a pole trailer, hereinafter referred to as the carrier.

It is not disputed that on the morning of June 15 defendant's carrier arrived at the job site carrying a load of piles and was directed to take up a position on Henderson street by the contractor's general foreman, Amos W. Stender, hereinafter referred to as Stender. The surface of Henderson street at the point where the carrier was admittedly positioned is four or five feet above the surface of the work area. It appears that the carrier was loaded with approximately twenty piles which ranged in length from 45 to 50 feet and were secured thereto by a chain.

The only evidence as to the method employed in unloading piles from the carrier was adduced through the testimony of Stender, who stated that generally "the piles have to be unloaded by hand with tools. They have to be rolled off the truck and they immediately drop off the side of the truck * * *"; and that "very rarely a pile ever comes off a truck without the help of the men taking it off. Very seldom does a pile ever roll off of its free accord. We also have to use peevees to roll these piles off." It further appears that certain skids are used to guide the piles away from the wheels of the carrier as they are unloaded and to provide runners along which the piles roll down the embankment and into the work area to positions where the construction carpenters prepare them for driving. From the testimony of Stender and other witnesses for plaintiff, it is clear that at the direction of Stender these skids had been erected and placed by the contractor's employees before plaintiff was injured.

Stender testified that while he was standing on Henderson street about 10 feet to the rear of the carrier, he observed defendant's driver "around his truck"; that the driver said to him: "Whenever you're ready we'll let this load of piles go"; and that he replied, "Okay," meaning that when he was ready for the unloading he would so inform the driver. When asked as to what happened next, he testified: "Well, I was surprised as I turned around and see two or three piles rolling from the truck." These piles, according to Stender, rolled down the embankment, and one of them, swinging around, hit plaintiff, who at that time was working some 30 feet away trimming a pile with a chain saw.

In urging error, defendant contends that there was a failure of proof on the issue of causation, there being in the record no direct evidence that defendant's driver released the piles and the circumstantial evidence adduced on that

point not being susceptible of a reasonable inference that the load had been released by defendant's driver. In so arguing, defendant, as we understand it, concedes that the trial justice complied with the obligation imposed on her by a motion for a new trial on the ground that the verdict was contrary to the weight of the evidence but contends that her conclusion thereon, being based on a misconception of the probative force of the evidence adduced on the question of causation, must be disregarded as clearly wrong. Inasmuch as the trial justice obviously inferred from the evidence the release of the piles by defendant's driver, this argument raises a narrow issue as to whether the relevant evidence is reasonably susceptible of such an inference.

The "clearly wrong" rule, so called, refers to the burden of an appellant who would overturn a decision of a trial justice who complied with the duty imposed by the motion for a new trial. The burden is on the defendant to show, in order to prevail on such a motion, that the trial justice either overlooked or misconceived some relevant and material evidence on a controlling issue. The defendant in this case, in seeking to meet this burden, contends that the trial justice misconceived the probative force of the evidence adduced on the issue of causation.

The precise ground upon which defendant relies is that the inference that its driver released the piles is not one that reasonably could be drawn from the relevant evidence on that issue. This raises a vexing question as to when is an evidentiary inference reasonable or, to state it otherwise, when are established evidentiary facts reasonably susceptible of a particular inference drawn therefrom by the trier of the fact? The ultimate question is, of course, when does an inference judicially drawn constitute legal proof of a material fact? This view has perhaps been aptly stated in *Hornick* v. *Bethlehem Mines Corp.*, 307 Pa. 264, 269: "It is easy to express the distinction between conjecture and

absolute proof but it is not easy to formulate a definition which in every situation will distinguish conjecture from legal proof with the certainty with which accredited chemical reagents perform their functions. If the administration of justice had to depend on demonstration by absolute proof, there would be few issues open to litigation, for such proof is rarely obtainable outside the realm of science. When a finding is a reasonable inference from the facts and conditions directly proved, it must be classed as legal evidence and not as a mere conjecture, surmise or guess."

The Pennsylvania court has thus sought to make it clear that the inference with which we are concerned in the judicial process is a conclusion resulting from inductive reasoning and that its function is to enable the courts, in an exercise of their fact-finding power, to acquire legal evidence for purposes of judicial proof. This concept of the role of the inference in the judicial process has been well stated also in *Pierce* v. *Albanese,* 144 Conn. 241, 256: "Difficulty in securing testimonial evidence does not, however, excuse the necessity of proof sufficient to establish a case. It compels, rather, a resort to the establishment, by direct testimonial evidence, of circumstances from which logical and reasonable inferences of other material facts can be fairly drawn. * * * In other words, the pleadings may admit, and witnesses may testify to, facts which in the light of human experience lead by the process of inference reasonably and logically to other facts. This process of inference is peculiarly a jury function, the raison d'etre of the jury system."

We concur in the view so clearly implied in the above decisions that in the judicial process the inference serves to establish through inductive reasoning legal evidence to the end that judicial proof may be attained. To that end, in the context of the judicial process an inference may have probative force even though it does not completely exclude

or explain away another hypothesis that is inferable from the same basic facts. In short, to curb the fact-finding power of a court by limiting substantially the use of inductive reasoning to reach conclusions that in the form of inferences will constitute legal evidence upon any given issue would have the effect of restoring to the judicial process trial by ordeal and combat.

In attacking the inference under consideration, that is, that defendant released the load of piles, as not being reasonable, defendant is contending that the inference is devoid of probative force for the reason that it fails to negate or exclude any other inference of contrary import that likewise might have been drawn reasonably from the evidentiary facts adduced at the trial. This is an argument of considerable force and has moved us to undertake the foregoing consideration of the inferential process. It poses the question whether the existence of alternate inferences that could be drawn from the evidentiary facts substantially negates the probative force of the inference that was selected by the trial justice. Viewing the inference in this light, we are of the opinion that the question of reasonableness thereof must turn on an inquiry as to whether the evidentiary facts point to the conclusion as being the *more* natural and plausible of those that might be drawn therefrom.

The most effective test within the judicial context for the determination of the probative force of the inference would appear to be the degree of probability inhering therein. "Thus, throughout the whole realm of evidence, circumstantial and testimonial, the theory of the inductive inference, as practically applied, is that the evidentiary fact has probative value only so far as the desired conclusion based upon it is a more probable or natural hypothesis, and as the other hypotheses or explanations of the fact, if any, are less probable or natural." Wigmore's Principles of Judicial Proof (2d ed.), §12, p. 26.

As to such an alternate inference, defendant suggests in this case that the evidentiary fact establishes the presence of a number of the employees of the contractor about the carrier at the time of the unloading and argues that an inference that the unloading was the result of action by one or more of them is as reasonable, if not a more reasonable inference, than that which the trial justice selected. It is difficult to reject such an alternate inference as being substantially less reasonable than that selected by the trial justice. That difficulty, however, only serves to point up the question whether in the judicial process an inference, to be reasonable and of sufficient probative force, must be as completely exclusive of other inferences as is required of inferences in scientific research. As we have already noted, such a requirement of absolute proof would vitiate the fact-finding power of the court to the detriment of an effective administration of justice.

It is our opinion that the probative force of the selected inference may be negatived by a showing of the susceptibility of the evidentiary fact to one or more inferences that have probability in such degree as to negate the probability of probative force in the inference selected. But the mere existence of contrary inferences in which probability inheres is not controlling on the acceptance by the trial justice of one of such inferences as probative of the fact in issue. See *Valente* v. *Bourne Mills*, 77 R. I. 274; *Colgan* v. *United Electric Rys.*, 65 R. I. 60.

In the instant case the trial justice elected to infer from the evidentiary facts that the driver of the carrier had released the load of logs, causing plaintiff's injuries. It appears from the testimony of Stender, to which she gave full credit, that the driver, whom he had seen delivering piles at the job site on other occasions, was standing by the carrier and informed him that he was ready to deliver the load when Stender was ready. To this Stender replied

with the rather ambiguous expression, "Okay," and immediately thereafter he observed some of the piles rolling from the truck. The record also discloses evidence that preparations for the unloading of the piles, both as to positioning the carrier and the preparation of skids and runners, had been at least substantially completed. We are unable to perceive that this evidence is not of sufficient probative force to render the conclusion of the trial justice that defendant's driver released the load a sufficiently plausible and natural conclusion that, in our opinion, was reasonably to be drawn from the evidence above referred to.

It is our opinion that the defendant has not established that the evidence of the circumstances and conditions surrounding the unloading of the piles from the defendant's carrier is so lacking in probative force as to render improbable or unreasonable the inference drawn therefrom by the trial justice and that such inference resulted from her misconception of the pertinent evidence. In reaching this conclusion we are fully aware of the defendant's reliance upon the decision of this court in *Dufresne* v. *Theroux*, 69 R. I. 280. We cannot agree that the decision in that case is controlling in the circumstances here. The court in that case, as we understand it, concluded primarily that there was no evidence in the record that the plaintiff therein had been injured as a result of being struck by a bale of merchandise being unloaded from the defendant's truck which would be sufficient to constitute a basis for any inference that there was a causal connection between the plaintiff's injury and the conduct of the defendant's driver. In the instant case there is evidence which establishes clearly that the injury of the plaintiff resulted from being struck by a pile unloaded from the carrier, and the question is whether all of the evidence surrounding the unloading is susceptible of a reasonable inference of a causal connection between the plaintiff's injury and the conduct of the defendant's driver.

The defendant's exception to the denial of its motion for a new trial is overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

CONDON, C. J., dissents.

*David B. Lovell, Jr., Hoyt W. Lark,* for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Guy J. Wells,* for defendant.