Cheshire,
No. 5358.

SOL MUTTERPERL & a.

*v.*

LAKE SPOFFORD HOTEL, INC.

Argued September 8, 1965.
Decided December 30, 1965.

*Cristiano & Kromphold* (*Mr. Joseph T. Cristiano* and *Mr. Eric J. Kromphold, Jr.* orally), for the plaintiffs.

*Bell, Bell & Shortlidge* (*Mr. Ernest L. Bell III* and *Mr. R. J. Shortlidge, Jr.* orally), for the defendant.

WHEELER, J. Actions in case brought by the executors of the estate of Suzanne Mutterperl and by Sol Mutterperl, her husband, individually against Lake Spofford Hotel, Inc. as a result of injuries sustained by Suzanne on August 7, 1960 in room No. 151 of the Hampshire House, owned and operated by the defendant.

Plaintiff Sol seeks to recover for medical expenses and loss of consortium of his wife Suzanne as a result of this accident. She subsequently died on January 13, 1964, and the executors of her estate were joined as plaintiff. No claim is made here that her death resulted from the accident.

Trial by jury resulted in verdicts of $10,000 for the estate of Suzanne Mutterperl and $42,500 for Sol Mutterperl.

During the course of the trial defendant excepted to the denial of its motions for a nonsuit, directed verdicts and mistrial, to certain rulings of the Court admitting and excluding evidence, allowing certain portions of plaintiffs' argument and to certain portions of the Court's instructions to the jury. These exceptions were reserved and transferred by *Loughlin*, J.

The substance of the plaintiffs' claims is that because of a negligently and carelessly wired electrical circuit, improperly fused, servicing room No. 151 occupied by them, that when a defective electrical heater was plugged in, the room lights were caused to go out leaving the room in darkness, as a result of which Mrs. Mutterperl was caused to fall and sustain personal injuries.

The principal contentions of the defendant are that there was no evidence of any negligent acts on its part, that there was no causal connection between any alleged negligence and injury to Suzanne and further that the plaintiffs were guilty of contributory negligence as a matter of law.

Certain material facts are not in dispute. For a number of years the Mutterperls had been paying guests at the defendant's hotel. At the time of the accident Sol was about 80 years of age and Suzanne 79. In 1960 at plaintiffs' request certain additional items were placed in their room which included a fan type heater, an extra dresser and a card table. The heater was plugged into a socket on the east wall of the room opposite the beds. On the evening in question the plaintiffs had attended a dance and social affair in the terrace room of the hotel. Sometime around midnight they returned to their room. Sol opened the door, and as was his custom turned on a switch near the door to put on the overhead lights. He next turned on the floor lamp and the night table lamp. He then walked over to the heater, located in the northeast corner of the room between the floor lamp and Mrs. Mutterperl's dresser, and turned it on. As he turned on the heater all the room lights went out simultaneously. At this time Mrs. Mutterperl was standing in front of her dresser. Shortly thereafter Mr. Mutterperl heard his wife fall and cry out in pain. He did not see her fall because of the darkness. He found her lying on the floor between

the beds. It was later determined that she had sustained a fractured hip. The lights were out for fifteen minutes to an hour. A maintenance man restored the lights by replacing a blown 30-amp fuse located in a closet of room 153 with a similar one.

Electricity to the plaintiffs' room on the night of the accident was supplied by what is known in the electrical trade as 12-gauge wire, fused by a 30-amp screw type fuse. This circuit furnished electricity to an overhead light, a bathroom light, a double receptacle (outlet) located on the east wall and a double receptacle on the west wall of the adjoining room 152. An electrical expert, over the objection of the defendant, was permitted to testify as to the results of his examination of the electrical system in the room occupied by the plaintiffs as well as the systems in rooms 152 and 153. The witness testified in substance that the electrical circuit in plaintiffs' room supplied with 12-gauge wire and a single 30-amp fuse was, according to any normal acceptable safety standards of the electrical trade, incorrectly fused and incorrectly wired. He further testified that separate circuits and fuses should have been furnished for lighting fixtures and for wall plugs and appliances. "It was not safe as to intrinsic circuitry." He further testified that some piece of equipment caused the fuse to blow because of an overloaded condition and that if a 20-amp fuse had been used, which is recommended for 12-gauge wire, it would have given prior warning of minor short circuits in the electrical equipment, since a heavier overload would be required to blow the 30-amp fuse used.

The witness' qualifications as an electrical expert were challenged by the defendant. It appeared that he had worked in the electrical trade since 1935 and had been an electrical contractor since 1948, engaged in wiring buildings, including hotels and motels, in general electrical repairs and in maintenance of all electrical appliances. It would appear that this witness had more knowledge of what constituted proper electrical installation than the average layman and that his testimony would be of aid to the jury in arriving at their conclusion. There was no error in receiving the witness' testimony. *Dowling* v. *Shattuck,* 91 N. H. 234; *Cloutier* v. *Charland,* 100 N. H. 63, 64.

Another contention of the defendant is that the Court erred in not granting a nonsuit upon the plaintiffs' opening statement. Plaintiffs' counsel stated to the jury in substance that Mrs. Mutterperl was caused to fall by some careless act of the defendant in

overloading the electrical circuit which caused the fuse to blow, leaving the room in total darkness and creating the hazardous condition; that the defendant knew or should have known that the heater was defective or that the electrical system would overload and render it unsafe for use. He further stated to the jury the plaintiffs would establish that the accident was not due to any voluntary act or contributory negligence on the part of Mrs. Mutterperl, but was caused by the sole negligence of the defendant.

These facts if established in evidence presented the essential elements in determining that the defendant's negligence was a substantial factor in causing the plaintiffs' injuries. The defendant's exception is overruled. *Maxfield* v. *Maxfield,* 102 N. H. 101, 105. See *Labore* v. *Company,* 101 N. H. 123, 127; *Scammon* v. *Page,* 102 N. H. 404.

We next turn to the contention that there was no evidence of any negligent conduct on the part of the defendant and if there was such negligence there was no causal connection between such conduct of the defendant and injury to the plaintiff, Suzanne Mutterperl.

The duty owed by a landlord to an invitee has been succinctly stated in the following language: "It is established law that a possessor of real estate is subject to liability for harm caused to business invitees upon the premises, if the harm results either from the possessor's failure to carry on his activities with reasonable care or from his failure to remedy or to give warning of a dangerous condition of which he knows or in the exercise of reasonable care should know." *Partin* v. *A & P Tea Co.,* 102 N. H. 62, 63, 64, and cases cited.

At the close of the plaintiffs' case the Court withdrew the following issues from the consideration of the jury: (1) That some careless act of the defendant caused overloading in the circuit; (2) the defendant knew system was overloaded; (3) the defendant knew the heater was defective; (4) the defendant knew electrical system in plaintiffs' room was rendered unsafe for use. In this state of the evidence in order to go to the jury evidence was required that the defendant failed to perform its duty to an invitee to use reasonable care to discover any existing risks and to make its premises reasonably safe. *Jacobson* v. *Yoken's, Inc.,* 104 N. H. 331, 334.

The defendant argues that no one knows how or why the lights were extinguished since there was no evidence that the defendant's

agents had any knowledge of any defect in the electrical system or any of the appliances. It is uncontroverted that all the lights in the room were suddenly extinguished when the heater was put on by Mr. Mutterperl and that a 30-amp fuse serving the circuit was found to have blown. On the evidence it was findable that some defect in the heater caused an overload in the circuit which blew the fuse.

It was, however, still necessary for the plaintiffs to establish that the defendant should have known that the electrical system was defective, and while the issue of actual knowledge on the part of the defendant was withdrawn from the jury the issue of what it should have known remained. See *Connell* v. *Company,* 93 N. H. 244, 245.

The defendant's agents and owners were not unacquainted with the wiring and fusing of the electrical system in the hotel. Victor E. Jacobson, who had been the manager of the hotel since 1946, held a degree as a mechanical engineer and had worked for a period of time with Western Electric. He and his brother acted as general contractors in the construction of the hotel. He testified that at the time of the construction of the Hampshire House in which the plaintiffs' room was located he told the electrical man that he wanted it wired so that they could have a heater in every room and directed him concerning the fixtures and outlets. 30-amp fuses were installed throughout the building and he knew that fuses had blown in 1960.

David Jacobson, a member of the defendant's corporation, had knowledge of electrical wiring and could read a wiring diagram and was partly in charge of maintenance of the hotel with his brother Victor and his father. The defendant therefore through its agents had a greater knowledge of electrical systems than would the average person. On the basis of this testimony it was findable that the defendant should have known that the system was improperly wired, so that if a defective appliance short circuited it would cause all of the lights in the plaintiffs' room to go out.

We next consider whether there was any causal connection between the alleged negligence of the defendant and the injury to plaintiff, Suzanne. At the time the lights went out she was standing in front of her dresser. In a short time Mr. Mutterperl heard her fall and cry out in pain. He felt his way toward her and she was stretched on the floor between the beds. The defendant argues that there is no testimony in the records show-

ing the cause of Mrs. Mutterperl's fall and that a jury finding on this issue could only be based on speculation and surmise. *Jutras* v. *Scanlon Co.,* 106 N. H. 130; Restatement (Second), Torts, *s.* 432.

While it is true that Mr. Mutterperl did not see Suzanne fall or what caused her to fall, it was not unreasonable for the jury to find from all the evidence and on the basis of their common experience that the cause of her fall was the darkened room caused by the negligence of the defendant in maintaining a defective lighting system. *Zellers* v. *Chase,* 105 N. H. 266, 268. It was findable that plaintiffs' injuries resulted as a direct consequence of the defendant's negligence. *Brackett* v. *Corporation,* 87 N. H. 173.

The defendant argues that because of Mrs. Mutterperl's age and her precarious state of health with little reserve it was just as probable that any one of her numerous disabilities or a combination of these conditions could have caused her to fall. It is true that she was a frail individual and had been in that condition for some period of time. She was and had been suffering from various physical ailments.

Dr. Lacey who examined her after the accident and treated her during her hospitalization testified as to her disabilities and stated that notwithstanding these "she was able to walk, get around, and so forth and enjoy life, yet was a person who had diabetic arteriosclerosis, but with some old people they are able to get about, unless something push[es] them out of balance." Her doctor in New York who had treated her on numerous occasions prior to the accident testified that she could get about and came to his office for her treatments.

On the night of the accident Mr. and Mrs. Mutterperl had attended a dance and social event at the hotel and she had walked to the room with him around midnight just prior to the accident. While the jury could have found that her physical condition was the sole cause of her fall when the lights went out, such a finding was not compelled.

The defendant further contends that regardless of any negligence on the part of the defendant the plaintiffs were guilty of contributory negligence as a matter of law. It is argued in support of this contention that when the lights went out the plaintiffs should have acted to protect themselves and that Mrs. Mutterperl should have stood still and awaited assistance and that Mr. Mutterperl should have gone to her aid by warning her

or offering help. While it could be argued that this would have been the best course to pursue, the question presented is not what the most careful person would have done but rather what the ordinary person of the age and physical condition of the plaintiffs would have done under the same or similar circumstances. Thus the fact that Mrs. Mutterperl did not stand still or that he did not go to her assistance is not fatal to their claim. Their conduct should be considered in the light of their respective physical conditions and ages. In such a situation where the actor is ill or physically disabled the standard of conduct to which he must conform in order to avoid being negligent is that of a reasonable person in like disability. "The law does not demand that the blind shall see, or the deaf shall hear, or that the aged shall maintain the traffic agility of the young." *Bernard* v. *Russell,* 103 N. H. 76, 77. Applying that standard to the condition and conduct of the plaintiffs on the night in question the evidence did not compel a finding of contributory negligence as a matter of law. The defendant's exceptions to the failure of the Court to grant a nonsuit and directed verdicts are overruled.

During the course of the trial objection was made to the introduction of a large quantity of bills and cancelled checks for drugs supplied to Mrs. Mutterperl during a four-year period following her accident. It appeared that a number of items were for the personal use of Mr. Mutterperl and in no way connected with her injuries. After opportunity was given the defendant's counsel to examine the various slips and checks it was agreed they could be marked as exhibits if plaintiffs' counsel would agree that they arose out of the accident.

In oral argument to the jury plaintiffs' counsel agreed that some of the items were not to be considered and told the jury to disregard those not connected with Mrs. Mutterperl's injuries. The Court likewise instructed the jury to disregard any drug bills not related to the accident. With these cautionary instructions no error is perceived in allowing them to be marked as exhibits.

Defendant excepted to the failure of the Court to give certain requests for instructions in the form in which they were requested. The Court fully and correctly instructed the jury as to the principles of law applicable to the case in language so phrased that it is reasonably certain that the jury understood them. In declining to employ the precise phraseology requested by the defendant the Court committed no error. *Dane* v. *MacGregor,* 94 N. H. 294, 298, 299; *Cyr* v. *Sanborn,* 101 N. H. 245, 250, 251.

During the course of this long and closely contested trial many other exceptions were taken by the defendant to the admission and exclusion of evidence and to other rulings of the Court. The defendant also suggested in oral argument that the cumulative effect of these alleged errors constituted abuse of discretion on the part of the Trial Court. We have carefully examined the entire record and find no error.

The order therefore is

*Exceptions overruled;*
*judgment on the verdicts.*

All concurred.