398 A.2d 1130.

PAULINE HILL, *Administratrix vs.* STATE OF RHODE ISLAND *vs.* JOAN HOUCK.

MARCH 9, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.   On August 2, 1971, 11-year-old Sherrie Hill drowned at the Lincoln Woods Park beach, which was owned and operated by the State of Rhode Island. Sherrie's mother, as administratrix, brought a wrongful death action against the state. At the conclusion of the plaintiff's case the trial justice granted the defendant's motion for a directed verdict because, in the court's opinion, the plaintiff had not proved a sufficient causal relationship between the death and the alleged negligent conduct of the defendant.

The plaintiff contends in this appeal, and we agree, that the trial justice erred because in viewing the evidence most favorably for plaintiff, a juror could reasonably infer that causation existed. Specifically, she contends that the lifeguard's delay in commencing the water search combined with the existence of a steep drop-off in the lake floor within the bathing area caused the death of the decedent.

The decedent Sherrie Hill was a young girl from the

Bronx, New York, who had come to Providence through the "Fresh Air Fund" of New York City. On the date of her death Sherrie had gone to the beach at Lincoln Woods Park accompanied by Joan Houck, Sherrie's adult supervisor in the program and a third-party defendant in this action. They were with a group of other children and adults. At about 3:30 p.m. Sherrie was reported missing by the other children. Joan Houck searched the beach and the parking area unsuccessfully and then asked the nearest lifeguard to conduct a water search. He refused to do so, however, until he had received permission from the captain of the lifeguards. Because of this delay, 5 to 6 minutes elapsed before the search was commenced. About 5 minutes after the search began, Sherrie was found unconscious under the water about 30 feet from shore. Resuscitation efforts failed to revive her. The medical examiner conducted an autopsy and found that death was due to drowning.

We concede at the outset that this case, like many unwitnessed death cases, presents a close question on the issue of causation.[1] Compare, e.g., Ingersoll v. Liberty Bank of Buffalo, 278 N.Y. 1, 14 N.E.2d 828 (1938) (decedent found at bottom of defective stairway — causation is jury question) with Wolf v. Kaufmann, 227 App. Div. 281, 237 N.Y.S. 550 (Sup. Ct. 1929) (decedent found at bottom of defective stairway — issue of causation too speculative to go to jury). Case law, however, reveals that the issue of causation is almost always a question for the jury. Gercey v. United States, 540 F.2d 536 (1st Cir. 1976); Brightwell v. Beem, 90 So. 2d 320 (Fla. 1956). When reasonable minds could infer that causation exists, the question must be submitted to the jury. The trial court should not take this question from the jury unless its findings would be based on speculation or conjecture. Indeed, a verdict should not be directed unless the only reasonable finding or inference that can be made is

[1]For the purposes of the directed verdict motion, the state stipulated that it was negligent.

against the adverse party. *Molinari* v. Sinclair Refining Co., 111 R.I. 490, 304 A.2d 651 (1973). *See generally* Becht & Miller, *The Test of Factual Causation in Negligence and Strict Liability Cases* (1961); Green, *The Causal Relation Issue in Negligence Law*, 60 Mich. L. Rev. 543 (1962).

Causation is proved by inference. As a result, proof of factual causation always involves a measure of uncertainty. As one scholar has written:

> "It appropriately has been observed that 'proof of what we call the relation of cause and effect . . . can be nothing more than "the projection of our habit of expecting certain consequents to follow certain antecedents merely because we had observed these sequences on previous occasions." ' From this it is clear that the process is basically one of conjecture, for facts almost never represent themselves in identical patterns. All that can be said with any assurance is that the facts introduced in evidence call to mind or suggest sequences between events which have been previously observed, or that the facts in evidence bring into play generalities which we have derived from previous observations (such as fire causes burn) and which we regard as being more or less dependable." Malone, *Ruminations on Cause-In-Fact*, 9 Stan. L. Rev. 60, 64-65 (1956).

Similarly, proof by inference is not proof that must exclude every other possible cause. *Salk* v. *Alpine Ski Shop, Inc.*, 115 R.I. 309, 342 A.2d 622 (1975); *Labbe* v. Hill Brothers, Inc., 97 R.I. 269, 197 A.2d 305 (1964). The proof, however, must be based on reasonable inferences drawn from facts in evidence, not conjecture. *Nahigian* v. *Belcher & Loomis Hardware Co.*, 66 R.I. 194, 18 A.2d 388 (1941).

In evaluating the evidence and inferences to be drawn therefrom in the present case, we are mindful of the directed verdict standard. As we have previously stated:

> "The court must view in the light most favorable to the adverse party all the evidence and the reasonable

inferences to be drawn therefrom, and a verdict should not be directed unless the only reasonable finding or inference that can be made is against the adverse party. Considerations of credibility or weight of the evidence are not for the court on such a motion, and, in considering the evidence, it must consider all the evidence submitted in a light most favorable to the party opposing the motion. *Aldcroft* v. *Prudential Insurance Co. of America,* 104 R.I. 240, 243 A.2d 115 (1968); *Sullo* v. *DiLorenzo,* 104 R.I. 188, 243 A.2d 113 (1968)." *Molinari* v. *Sinclair Refining Co.,* 111 R.I. at 494, 304 A.2d at 654.

Applying this standard, we believe that a juror could reasonably infer that the drop-off on the bottom of the bathing area was a factual cause of the death of Sherrie Hill. Doctor Milton Gabrielson, an expert in recreational water safety, testified for plaintiff. He stated that, based on depth figures provided in defendant's answers to interrogatories, the existence of a 40° drop-off on the bottom of the swimming area presented a dangerous hazard to bathers. He explained that the bottom sloped gradually to a depth of 3 feet at about 24 feet from shore, whereupon it then plunged sharply downward so that within the next 9 feet it reached a depth of almost 10 feet. In his opinion a person stepping off this precipice would not be able to regain his footing. There were no warning signs or safety ropes to protect bathers from this condition.

Sherrie was found half-way down this slope. She was facing toward the shore with one arm extended toward the surface. The water depth was about 7 feet 3 inches at this point. Three feet closer to shore the water was 5 feet deep. Six feet closer to shore the water was 3 feet deep. There was no evidence of any water current. The record also discloses that the decedent was 5 feet tall, that she had been seen playing at the edge of the water shortly before her death, and that she could swim. Analyzing all of these facts in a light most favorable to plaintiff, it would not be unreasonable for a juror to conclude that the drop-off was a factual cause of

the death of the decedent. *See Burgert* v. *Tietjens*, 499 F.2d 1 (10th Cir. 1974); *Mutterperl* v. *Lake Spoffard Hotel, Inc.*, 106 N.H. 538, 216 A.2d 35 (1965); *cf. Nolan* v. *Young Men's Christian Association*, 123 Neb. 549, 243 N.W. 639 (1932). *But see Brotherton* v. *Manhattan Beach Improvement Co.*, 48 Neb. 563, 67 N.W. 479 (1895).

We believe that in applying the directed verdict standard and drawing all inferences in a light most favorable to the adverse party, the issue of factual causation should go to the jury. The trial justice therefore erred in granting the motion for a directed verdict.

The appeal of the plaintiff is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court.

*Abedon, Stanzler, Biener, Skolnik and Lipsey, Milton Stanzler, Richard A. Boren,* for plaintiff.

*Julius C. Michaelson,* Attorney General, *J. Peter Doherty,* Special Assistant Attorney General, *Swan, Jenckes, Asquith & Davis, Harry W. Asquith, Conrad M. Cutcliffe* (for Joan Houck), for defendants.