Paul J. CARTIER

v.

STATE.

No. 78–261–Appeal.

Supreme Court of Rhode Island.

Oct. 2, 1980.

---

Gunning, LaFazia & Gnys, Inc., Netti C. Vogel, Providence, for plaintiff.

Dennis J. Roberts, II, Atty. Gen., Richard B. Woolley, Forrest L. Avila, Sp. Asst. Attys. Gen., for defendant.

OPINION

MURRAY, Justice.

These are cross–appeals in a negligence action for personal and consequential injuries suffered by the plaintiff Paul Cartier in a single–car accident on the Jamestown Bridge. Cartier sued the State of Rhode Island (the state), alleging that the state's failure to correct an unsafe condition on the Jamestown Bridge caused him to lose control of the automobile he was driving over the bridge, resulting in serious injuries. A Superior Court jury returned a verdict in favor of the plaintiff, but the trial justice granted the defendant's motion for a new trial on the limited issue of negligence. The plaintiff appeals from the order granting a new trial, and the state in its cross–appeal challenges several rulings made at trial. Our review of the record discloses the following evidence.

Paul Cartier testified on direct examination that after appearing in a play in Wakefield on the night of June 16, 1972, he attended a party thrown for the cast at a home in Saunderstown. At approximately 3 a. m. on June 17, he left the party by himself in his wife's automobile and headed via the Jamestown Bridge for his home in Jamestown. Cartier testified that upon reaching the bridge, he slowed to a crawl while driving through a narrow passageway next to the place where a toll booth had once stood. After passing through that area, he resumed a speed of about thirty miles per hour as he ascended a long incline leading to a narrow, unpaved roadway formed of steel grating at the bridge's peak. He stated that when he reached the steel grating, he removed his foot from the accelerator pedal, thereby causing the vehicle's speed to decelerate to "well under thirty" as it continued to ascend for several hundred feet. Soon after his car passed the top of the bridge, it supposedly began to slide out of control to the left on the steel grating. Cartier's last recollection of the accident was of locking his feet on both the operating brake and the emergency brake.

On cross-examination, Cartier, who had moved to Jamestown about three weeks before the accident, acknowledged that he had traversed the bridge at least fifty times prior to the accident. He admitted being aware both of the word "caution" on a posted sign that warned "caution slippery" and also of a posted speed limit of twenty-five miles per hour. He reiterated that the automobile was in good operating condition and that the tires were relatively new. He also stated that the visibility at the time of the accident was not good because of sporadic rainfall.

Sergeant Thomas P. Tighe of the Jamestown police department testified on direct examination that he had investigated the accident after receiving a call at approximately 3:40 a. m. He recalled that upon arriving at the scene, he observed rescue personnel administering first aid to Cartier, who was lying on the road just on the Jamestown side of the bridge. One of Cartier's shoes was about ten feet from him.

According to Tighe, Cartier's demolished automobile was on the opposite side of the road with its hood lying on the road. Basing his analysis on the location of other debris from the car and a damaged bridge railing, Sergeant Tighe inferred that the point of impact was approximately fifteen or twenty feet beyond the end of the metal grating on the Jamestown side of the bridge.

On cross-examination, Sergeant Tighe identified a diagram of the accident scene, which was admitted into evidence with the understanding that although the indicated measurements were accurate, the diagram was not drawn to scale. The diagram showed that the car came to rest at approximately 114 feet from the point of impact. Sergeant Tighe testified that there was heavy rain that night and that visibility was bad at times, although he didn't recall fog at the bridge. He testified that the twenty-five-mile-per-hour speed limit over the metal grating was posted about halfway along the incline that Cartier had ascended.

On redirect examination, Sergeant Tighe testified in response to a hypothetical question that the point of initial impact, as diagrammed, was consistent with an automobile spinning out of control on the metal grating. On re-cross-examination, he testified that, considering the conditions he encountered at the scene, he "would certainly say [Cartier] was doing more than twenty-five miles per hour" just prior to the impact.

The next witness was Samuel Engdahl who before leaving the state's employ in 1976 had served as chief design engineer for the Rhode Island Department of transportation. The plaintiff's attorney questioned Mr. Engdahl about a letter that he acknowledged having written in July of 1970 while serving as a bridge engineer to Morris Chorney, Director of Public Works. Mr. Engdahl indicated that he wrote the letter to apprise his superior of an existing situation on the Jamestown Bridge, a situation that could be improved. Specifically, he

testified to notifying Mr. Chorney that the stretch of metal grating at the peak of the bridge was more slippery than the rest of the bridge's roadway and to recommending that the situation be remedied by welding studs to the top of the metal grating. Implementation of his recommendation, he stated, would cost approximately $20,000. According to Mr. Engdahl, the slippery grating constituted a dangerous situation as manifested by some accidents on that section of the bridge. He believed that installation of studs "would cut down the dangerous situation to some extent." Mr. Engdahl testified, however, that the state had taken no action to correct the situation as of June 17, 1972, the date of Cartier's accident.

The state recalled Mr. Engdahl as its first (and only) witness. He testified that in his professional opinion the portion of the bridge composed of the steel grating was more slippery than the paved sections and that the metal grating necessitated, and was therefore posted for, a lower speed. He thought that a uniform speed limit could be safely imposed for the entire structure if the studs were installed. He maintained, however, that passage over the metal grating in rainy weather was safe at the posted speed limit of twenty-five miles per hour, as had been the case with five thousand other cars, on average, which had used the bridge each day.

On cross-examination, plaintiff's attorney referred to statements contained in Engdahl's 1970 letter to Morris Chorney to impeach Engdahl's testimony that the metal grating was not dangerous when cars obeyed the posted speed limit. Following plaintiff's cross-examination, the state rested its case.

The state thereupon renewed its motion for a directed verdict which it had made at the close of plaintiff's case, claiming that plaintiff's evidence had failed to show that any action by the state was the proximate cause of his injuries. The trial justice reserved ruling on that motion until the jury had returned a verdict. He then instructed the jury on the applicable law, including the law of comparative negligence.

At the conclusion of their deliberations, the six members of the jury returned a verdict of $31,000 for plaintiff on the ground that the state was negligent. As indicated by their answer to an interrogatory submitted by the court, the jury determined Cartier was free of negligence. The trial justice thereafter denied the state's motion for a directed verdict, which he had reserved ruling upon until the jury delivered their verdict. A final judgment was entered on March 20, 1978.

On the same day the state moved for a new trial on the grounds that the verdict was against the law, against the evidence, and against the law and the evidence and the weight thereof. At a subsequent hearing on the new-trial motion the trial justice rejected the state's contention that the evidence was insufficient to enable the jury to infer reasonably that proximate cause existed. The state's motion proved more availing, however, on the issue of comparative negligence, for the trial justice ruled that the jury erred when it failed to find that plaintiff was contributorily negligent. Accordingly, in an order entered on April 27, 1978, the trial justice granted the state's motion for a new trial. The plaintiff filed a timely notice of appeal from that order, and the state filed a seasonable cross-appeal from the judgment entered on March 20, 1978.

We shall consider initially plaintiff's contention that the trial justice erred in granting the state's motion for a new trial. When deciding a motion for a new trial, a trial justice must independently weigh the material evidence in light of his charge to the jury and pass on the credibility of the witnesses. *Roth v. Hoxsie's Arco Service, Inc.*, R.I., 399 A.2d 1226, 1229 (1979); *Dixon v. Royal Cab, Inc.*, R.I., 396 A.2d 930, 935 (1979). In the process, he can exercise wide discretion in choosing whom and what he finds persuasive, and he can supplement the evidence by drawing reasonable inferences from the record. *Puc v. Leaseway of New England*, R.I., 396 A.2d 940, 941–42 (1979); *Barbato v. Epstein*, 97 R.I. 191, 193–94, 196 A.2d 836, 837 (1964).

Upon completing this process of acceptance, rejection, and addition, if he determines that the evidence is such that reasonable minds could differ, he should deny the motion for a new trial. Alternatively, when in his judgment the verdict fails to respond truly to the merits of the controversy and to administer substantial justice and is against the preponderance of the evidence, he should set aside the jury's verdict and order a new trial. *Galusha v. Carlson*, R.I., 386 A.2d 634, 635 (1978); *Barbato v. Epstein*, 97 R.I. at 194, 196 A.2d at 837. When the trial justice makes his decision in accordance with the foregoing standards, his ruling will not be disturbed on appeal unless he has overlooked or misconceived material evidence on a controlling issue or was otherwise clearly wrong. *Puc v. Leaseway of New England*, R.I., 396 A.2d at 942.

■ A review of the evidence and the trial justice's decision on the new-trial motion indicates that he exercised his independent judgment. He stated expressly that he did not believe plaintiff's testimony about the moderate speed at which he was driving. He accepted Sergeant Tighe's opinion that plaintiff was exceeding twenty-five miles per hour and Samuel Engdahl's opinion that the bridge could be traversed safely in the rain at twenty-five miles per hour. To a lesser extent, he relied on the diagram made by the investigating police officer. His rejection of plaintiff's credibility and his analysis of contradictory testimony convince us that he did not overlook or misconceive material evidence. Accepting the trial justice's view of the evidence, we rule that he was not clearly wrong in concluding that the jury's finding that plaintiff was free of negligence was against the evidence and failed to administer substantial justice.

The plaintiff notes that the particular testimony of Sergeant Tighe and Mr. Engdahl to which the trial justice referred in granting a new trial was admitted at trial over his objection. He claims that the testimony in both instances was inadmissible at trial. Although conceding that a trial justice cannot correct his own errors of law

when ruling on a motion for a new trial, plaintiff nevertheless contends that the trial justice should not be permitted to rely upon inadmissible evidence when overturning a jury verdict. Assuming that such testimony was inadmissible, we need offer no opinion on the issue plaintiff poses; for once the trial justice rejected Paul Cartier's credibility, there was simply no evidence that would support the jury's finding that he acted with all reasonable care. That factor is sufficient to sustain the order granting a new trial.

We turn to consider the contentions raised by the state in its cross-appeal. Initially, the state argues that the trial justice erred in denying its motion for a directed verdict at the close of the evidence because plaintiff failed to establish a causal relationship between defendant's alleged negligence and the accident.

■ Causation is proved by inference; thus when reasonable minds could infer that causation exists, the question must be submitted to the jury. A verdict should not be directed unless the only reasonable inference is against the adverse party. *Hill v. State*, R.I., 398 A.2d 1130, 1131-32 (1979). Proof by inference need not exclude every other possible cause, but it must be based on reasonable inferences drawn from the facts in evidence. *Id.* 398 A.2d at 1132.

When reviewing a decision on a motion for a directed verdict, this court must view the evidence and all reasonable inferences therefrom in a light most favorable to the non-moving party without consideration of weight or credibility. *Id.; Schenck v. Roger Williams General Hospital*, R.I., 382 A.2d 514, 516 (1977).

■ Viewing the evidence in the requisite light, we rule that the trial justice did not err on the issue of causation when he submitted the case to the jury. Paul Cartier had testified that when his car began to slide out of control on the metal grating, he was driving at well under thirty miles per hour. He had asserted also that his vehicle was in good operating condition and that the tires were only two months old. Ser-

geant Tighe, the investigating officer, had testified that the point of impact was consistent with Cartier's testimony that he had spun out of control on the metal grating. Finally, Mr. Engdahl had testified that the slippery grating constituted a dangerous situation as manifested by some accidents on that section of the bridge. On the basis of that evidence, we conclude that reasonable minds could infer that the slippery condition on the bridge was the cause of Cartier's accident.

In its second argument, the state contends that the trial justice erroneously excluded evidence relevant and material to the issue of whether the state negligently failed to correct the slippery condition on the bridge. In an offer of proof, the state indicated that it would have sought to rebut plaintiff's evidence of negligence by introducing evidence of a comprehensive plan for upgrading the state highway system. According to the state, the plan delineated a list of priorities in light of appropriations. Though the Jamestown Bridge was an area of concern, other projects had been assigned a higher priority in light of available appropriations. The trial justice concluded that the offer of proof was irrelevant to the issue of negligence.

We concur with his ruling on the basis of our view of the state's offer of proof. The state, in effect, sought to raise a defense of nonresponsibility relying on financial inability to correct an area of possible concern. Even if we assume the viability of such a defense which one court has expressly rejected, *State ex rel. Byorth v. District Court*, 572 P.2d 201 (Mont.1977), we conclude that evidence in support of such a defense is relevant only after the defense has been raised in the pleadings. The state failed to do so. Thus, we affirm the correctness of the trial justice's ruling without deciding the substantive issue of whether such a defense may be raised.

 Where cost is but one among many factors affecting the state's choice of a particular method of construction or repair, it is relevant to the reasonableness of the alternative taken and thus to the issue

of negligence itself. *Modrell v. State,* Mont., 587 P.2d 405, 406 (1978). The state's denial of negligence would be sufficient to allow introduction of the factor of cost if it were one factor asserted by the state as evidence of the reasonableness of repair measures taken. The record before us, however, indicates that the state raised the factor of cost as the sole and determinative reason for having taken no action. Assuming for purposes of analysis that such a defense could be raised, we rule that it must be raised in the pleadings to be an issue at trial.

The defendant argues next that Engdahl's testimony concerning the letter he had written in July 1970 to Morris Chorney was inadmissible under the hearsay rule. The plaintiff submits that the state failed to object properly to preserve this issue for review.

 A party's failure to object seasonably at trial to a question precludes review of an objection raised for the first time on appeal. *Russian v. Lipet,* 103 R.I. 461, 466–67, 238 A.2d 369, 372 (1968). When Mr. Engdahl first testified the state raised two timely objections to questions posed that it now objects to on appeal.

 The first objection, made immediately after plaintiff's counsel asked Mr. Engdahl to forget about the letter, indicated that the state objected to the question unless Mr. Engdahl testified from his recollection rather than directly from the letter. At that point, the trial justice informed Mr. Engdahl that he could use the letter if necessary to refresh his recollection. The trial justice's instruction is consistent with well–settled law controlling the use of a writing to refresh a witness's memory. *See State v. Contreras,* 105 R.I. 523, 539–40, 253 A.2d 612, 621–22 (1969). No error existed under the circumstances. The second objection appears to be directed against testimony that Mr. Engdahl was about to give rather than the preceding question. We find again no basis for error. The state posed one other objection after the question objected to had been answered. Such an

objection was untimely. The state also objects to additional testimony given by Mr. Engdahl when cross–examined by plaintiff after he testified for the state. We do not reach the issue because no objections were made at trial.

The state next argues that the trial justice failed to instruct the jury not to indulge in speculation or conjecture in reaching a determination of whether plaintiff had met his burden of proof on the essential elements of the case. Among other instructions, the state had proffered the following:

> "*Burden of Proof*. The mere happening of an accident does not ordinarily justify the inference that defendant was negligent and that his negligence proximately caused the accident and injuries to plaintiff. The [b]urden is on [p]laintiff to produce competent evidence that defendant was negligent and that its negligence was the proximate cause of the injury. A plaintiff may not rely on conjecture or speculation to establish the essential elements of his case. ([*Salk v. Alpine Ski Shop, Inc.,*] 115 R.I. 309, [342 A.2d 622])."

The trial justice instructed the jury that plaintiff had the burden of proving that the state was negligent and that such negligence was the proximate cause of his injuries. The state objected at the close of the instructions, asserting merely that the instruction quoted above was not read to the jury.

In pertinent part, Rule 51(b) of the Superior Court Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto * * * stating

distinctly the matter to which he objects and the grounds of his objection." We have recently stated that

> "This provision is included in the rules in order to afford the trial justice an opportunity to correct his instructions, if necessary, and the objection must be specific enough so that the court's attention is focused on the precise nature of the alleged error. *Seabra v. Puritan Life Insurance Co.*, 117 R.I. 488, 503–04, 369 A.2d 652, 661 (1977)." *Johnson v. Palange*, R.I., 406 A.2d 360, 366 (1979).

 The admonition to refrain from conjecture and speculation in the state's request was not, in the context of the entire request, an obvious ground of objection. We therefore conclude that the state failed to alert the trial justice with sufficient specificity that it was requesting him to instruct the jury not to engage in conjecture for us to assign his failure to do so as error on review. *Halpert v. Rosenthal*, 107 R.I. 406, 418, 267 A.2d 730, 736 (1970).

The plaintiff raises a final issue pertaining to the order granting a new trial. We conclude there is no merit in the plaintiff's contentions.

The parties' cross–appeals are denied, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.