387 A.2d 1056.

FILOMENA UCCI, ADMINISTRATRIX OF THE ESTATE OF
LOUIS UCCI *v.* JAMES MANCINI *et ux.*

JUNE 27, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   This appeal marks but another chapter in what appears to be a never-ending controversy between Filomena Ucci and James Mancini regarding a parcel of land located in Warwick on the northerly side of Occupasstuxet Road. On September 29, 1964, Mancini[1] leased the property to Filomena's late husband, Louis, who then proceeded to operate a fruit and produce stand at this location. The lease called for a monthly rental of $175 and gave Louis' administrators and assigns an option to purchase the parcel at any time subsequent to July 1, 1968. Louis died in November 1965, and Filomena, as the administratrix of her husband's estate, continued to operate the business. In 1968, when Filomena tendered the April rent, it was refused. Later, in May 1968, she was notified by Mancini that the lease was terminated and was told to vacate the premises on or before June 1, 1968. At that time Filomena had failed to comply with a lease provision requiring the procurement of a public liability insurance policy which would protect Mancini. She did not vacate the premises, and on August 19, 1968, she notified Mancini that she was exercising her option to purchase; thereafter the parties became immersed in litigation.

---

[1]The parcel is owned by Mancini and his wife. Since the wife's participation in this litigation has been minimal, we shall refer only to her husband and then by his last name.

On January 30, 1969, Filomena instituted a civil action in the Superior Court in which she sought specific performance of the option. At the same time she filed a petition in which she described her unsuccessful attempts to pay the monthly rent to Mancini and reported that during one such attempt he had threatened her physical well-being. Consequently, Filomena asked that she be permitted to deposit all future rental payments, as well as those Mancini refused, into the registry of the court. An ex parte order was issued permitting her to do this. The registry records indicate that Filomena continued to make rental payments into the registry up to November 1972. The total amount of rent deposited with the clerk amounts to some $11,000, including interest.

Mancini filed an answer, denying all of the material allegations of Filomena's complaint, and a counterclaim, seeking a decree forfeiting the lease and the option as well as a claim for the rent "stipulated under the lease for the period April 1968 to August 1969, inclusive * * *."

We first became aware of the Ucci-Mancini imbroglio when, in September 1971, Filomena took an appeal from a Superior Court order directing her to pay to Mancini a share of an increase in the real estate taxes assessed against the parcel. The lease provided that the lessee would pay a proportionate share of any real estate tax assessed during the period of occupancy. On May 23, 1972, we entered an order dismissing the appeal pro forma but, in attempting to assuage Filomena's fear that her contribution would never reach the tax collector, directed the trial justice to amend his order so that Filomena's share would be paid to Mancini's attorney, who, in turn, would pay it to the municipality. *Ucci* v. *Mancini*, 110 R.I. 909, 290 A.2d 616 (1972).

Subseqently, following a 2-day hearing in November 1972, a Superior Court justice granted the prayer for specific performance and denied Mancini's counterclaim. Mancini appealed.

When Mancini's appeal came on to be heard, a four-man court divided equally and affirmed the trial justice's judgment. *Ucci v. Mancini,* 113 R.I. 261, 320 A.2d 334 (1974). Later, we granted Mancini's motion to reargue before a full court. *Ucci v. Mancini,* 113 R.I. 929, 320 A.2d 334 (1974). After reargument we discovered that the record had been prematurely certified to us because the controversy concerned multiple claims and there had been no compliance with Super. R. Civ. P. 54(b). The record was returned to the Superior Court, where a new and properly certified judgment was entered on June 12, 1975.

A month or so later we issued an opinion in *Ucci v. Mancini,* 115 R.I. 182, 344 A.2d 367 (1975), where a majority of this court found that Filomena's exercise of the option was a nullity because on August 19, 1968, she was not holding under the lease. The majority was of the opinion that Filomena, having breached the lease and having failed to vacate the premises as directed, was either a trespasser or a tenant at sufferance at the time she purported to exercise the option. The judgment entered in the Superior Court was vacated, and the case was remanded with "a direction to enter judgment for the defendants." Following the receipt of the record in the case, the clerk of the Superior Court's Kent County division entered a printed form of judgment which, in its pertinent portion, reads: "[T]he plaintiff take nothing," and "the action be dismissed on the merits."

Later, in October 1975, Mancini filed a motion to amend, in which he asked to file a "supplemental counterclaim" in which he sought to recover $11,200 allegedly due "for rental and a reasonable amount for use and occupancy of said real estate from April of 1968 to July of 1975." The record became further clouded when in early November 1975 a judgment was entered at the order of the justice who had presided at the jury-waived trial. That judgment describes the travel of the case from its inception through the trial, the appeal, and our remand and, in its relevant part, reads as follows:

"1. The Judgment of this Court granting the Plaintiff's Prayer for specific performance is hereby vacated.

"2. Judgment is hereby entered in favor of the Defendants."

Mancini's supplemental counterclaim motion was heard during mid-February 1976 before a justice other than the one who had presided at the 1972 trial. After listening to arguments both pro and con and considering supporting memoranda, the motion justice filed a written decision in which he found for Filomena and against Mancini. Mancini then instituted this appeal.

The motion justice, after referring to the facts detailed in *Ucci v. Mancini*, 115 R.I. 182, 344 A.2d 367, and the holding of the majority in that case, expressed the belief that the only result effectuated by that holding was a vacating of the trial justice's order that Mancini sell the property to Filomena. The motion justice stressed that we had issued no directive regarding the trial justice's denial of Mancini's counterclaim for damages. Accordingly, he characterized Mancini's supplemental counterclaim motion as an afford to revive his claim for damages and ruled that such a motion could not be entertained after the entry of final judgment.

Having ruled that Mancini's motion was a nullity, the motion justice judiciously observed that the time had come to terminate this litigation. With this goal in mind, he decided to treat Mancini's motion and Filomena's objection thereto as two separate petitions, in which each petitioner laid claim to the $11,000-plus on deposit in the court's registry. The motion justice then applied the doctrine of res judicata to Mancini's petition by ruling that the question of damages could have and should have been litigated at trial. He also declared that since the "Supreme Court" had not reversed the trial justice's dismissal of Mancini's counterclaim, Mancini was precluded from laying claim to any of the registry funds. In the motion justice's view, Filomena had a "superior claim"

to the registry funds and authorized the clerk to pay the the sum of $6,300 plus interest.[2]

Everyone applauds the motion justice's desire to ring down the curtain on this litigious production, which has been on stage within the Rhode Island judicial circuit for over 9 years. However, we must part company with the motion justice as we consider his all-or-nothing approach to the funds now on deposit with the registry.

It is our belief that the motion justice did not have the benefit of the trial transcript when he considered Mancini's motion. The transcript indicates that after Filomena had presented her case, Mancini testified in support of his counterclaim. The record makes clear that Filomena used the premises to sell fruit, produce, and a variety of other items, apparantly until some time in the fall of 1969, when Mancini came by and demolished the stand.

Once Mancini had completed his testimony, a colloquy ensued between the trial justice and counsel for the litigants. They agreed that if the trial justice was required to determine the fair and reasonable value of Filomena's occupancy, he could determine this issue by using the monthly rental stipulated in the lease.

The judgment that was reviewed by the full court in its consideration of Mancini's first appeal specifically provided for the return of all the pre-August 19, 1968 rents then on deposit in the registry to Mancini. In his brief Mancini contended that since Filomena no longer enjoyed the status of a lessee when she notified Mancini that she wished to purchase the parcel, judgment should be entered for him "for possession of the premises in question and damages."

---

[2] We are somewhat puzzled by the motion justice's use of a $6,300 figure as indicating the amount on deposit in the registry. The record filed by the registry shows that $7,875 in rental payments was ultimately received from Filomena. Interest on this sum has now swelled the entire fund as of April 28, 1978 to a little over $11,000.

Upon reflection we must concede that a more precise remand might have been articulated. It was obvious to all that Filomena had occupied and used Mancini's parcel for some time subsequent to June 1, 1968, the date when Mancini had directed her to vacate the premises because of her violation of the terms of the lease. Simple justice demands that she pay him for the period following this date. Prior to June 2 she was bound to compensate Mancini for use of the property in accordance with the rental figure specified in the lease. However, by remaining in possession after that date, Filomena did so in derogation of Mancini's right to immediate possession and became a trespasser upon the property. *Donnelly Realty Co.* v. *Langevin*, 78 R.I. 333, 82 A.2d 173 (1951); *Union Trust Co.* v. *National Coal Co.*, 66 R.I. 485, 20 A.2d 373 (1941). For the period of her occupancy as a trespasser, Filomena must make amends to Mancini by compensating him for any damages which he suffered.[3]

In assessing the question of damages Mancini incurred, the trial justice's standard is not unlike that found in any action wherein a person has been wronged. The injured party should be made whole, which in this case may be done by determining the reasonable rental value of the premises for the time the property was wrongfully withheld. *Berg* v. *Slaff*, 125 A.2d 844 (D.C. Mun. App. 1956); *Massey* v. *Goforth*, 305 S.W.2d 894 (Mo. App. 1957); Annot., 32 A.L.R.2d 582, §4 (1953). The sum which such a determination yields may or may not be equal to the amount of the former rental. While the stipulated rent in a lease is some indication of the reasonable rental value, it is only one factor to be taken under advisement by the trial justice. He should also consider several other factors, such as profits which might have been gained, the property's location, and the season during which

---

[3]An action for damages has a different basis than an action for rent under G.L. 1956 (1969 Reenactment) §34-18-2. The statutory proceeding applies only in an action against a tenant at sufferance and not against a trespasser. While the distinction between a trespasser and a tenant at sufferance is often hazy, in this case there can be no doubt that Filomena became a trespasser when she refused to quit the premises after June 1, 1968.

the trespasser remained on the premises. Annot., 32 A.L.R. 2d 582, §5 (1953).

However, in the case at bar our intention has ever been to hold the litigants to their trial agreement that the reasonable rental value of Filomena's trespassory occupancy would be computed solely by the use of the $175 monthly rental called for in the lease. The calculations necessary to effectuate this agreement can best be done at the trial level. There the litigants can present evidence as to just how long Filomena occupied the premises post-June 1, 1968. Once the trial court has determined the extent of the post-June 1, 1968 occupancy period, it shall employ as the reasonable value standard the $175-per-month figure.

On deposit in the court's registry is, as noted earlier, some $11,000 paid by Filomena which represents those rental payments that Mancini refused to accept in 1968 as well as rents accruing after she commenced the civil action in January 1969. From this sum the trial justice shall order to be paid to Mancini all of the pre-June 2 rent due him plus the "damages" suffered by Mancini by reason of Filomena's unlawful occupancy from June 2 to whenever she vacated the premises. If the registry fund is not exhausted after payment of these sums to Mancini, whatever else remains shall be paid to Filomena.

Finally, it is with some reluctance that we direct the attention of the Superior Court justice who will consider this matter on remand to an additional issue which neither party has raised but which we feel compelled to highlight so that a complete and final resolution of this protracted affair can be effectuated. As noted earlier in this opinion, during August 1971 an order was entered, commanding Filomena to pay Mancini some $4,812. This sum represented the lessee's proportionate share of increases in real estate taxes assessed against the parcel for the years 1964 through 1971. It is clear that subsequent to June 1, 1968, the terms of the lease could no longer be relied upon by either party. After that date, Filomena became a trespasser liable to Mancini for damages.

It is obvious that Filomena has paid a share of the real estate taxes according to the terms of the lease which cover a period when the lease actually was no longer in effect. Until the problems engendered by this facet of the case are resolved, we see no hope of ever ending this dispute. Consequently, on remand the trial justice should calculate the amount of the real estate taxes paid by Filomena that may be attributable to the period subsequent to June 1, 1968. Since the lease was not in effect during this time span, Mancini has no claim against her for those taxes. From the amount which the court awards as damages to Mancini, it must set off or deduct the sum Filomena was required to pay as real estate taxes for the period subsequent to the lease's termination.

The defendant's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*Joseph F. Penza, Jr.,* for plaintiff.

*Dick & Hague, William F. Hague, Jr.,* for defendant.