Domenico CARDI

v.

AMORIGGI SEA FOODS, INC. et al.

No. 82–382–Appeal.

Supreme Court of Rhode Island.

Dec. 20, 1983.

As Corrected Jan. 17, 1984.

Francis Castrovillari, Castrovillari & Castrovillari, Cranston, for plaintiff.

John D. Deacon, Jr., Edwards & Angell, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is a civil action brought by the plaintiff, Domenico Cardi, seeking possession of premises located at 1391–1401 Park Avenue, Cranston, Rhode Island, occupied by the defendant, Amoriggi Sea Foods, Inc. At the close of all the evidence, both parties moved for directed verdicts. However, the trial justice reserved decision and submitted the case to the jury. The jury returned a verdict for the plaintiff for possession and costs. The trial justice thereafter denied the motions for directed verdict. The defendant filed a motion for a new trial, and after due consideration the trial justice granted the motion.[1] The plaintiff appeals from the granting of a new trial, and in turn the defendant files a cross-appeal from the denial of his motion for a directed verdict.[2]

The record discloses the following relevant facts. In August 1977, defendant, Amoriggi Sea Foods, Inc. (Amoriggi), entered into a long-term commercial leasing agreement with plaintiff, Domenico Cardi, and his wife, Ann, for property they owned in Cranston. The terms of the agreement provided that Amoriggi would pay monthly rent at the rate of $3.50 per square foot. The lease was renewable until the year 2002 and provided for incremental rent increases for every renewal period. Failure of Amoriggi to pay rent within ten days of the first of the month would constitute a default under the lease. The parties also agreed that Amoriggi could not assign or sublet the premises without the prior written consent of plaintiff.

In late 1979, Louis Amoriggi, one of the owners of defendant business, informed Cardi that Amoriggi Sea Foods was contemplating the sale of its business and requested permission to assign the lease to the potential purchasers. Cardi denied this request, stating that he would want a new lease in the event of a sale of the business. In January of 1980 Cardi met with Louis Robbio, who represented General Seafood Products, Ltd. (General), the potential purchasers of the Amoriggi business to negotiate the terms of the new lease. The parties orally agreed that General would rent the existing premises at the increased rate of $6 a square foot. Also to be included in the new lease was adjacent space in the same building that Cardi had been using as a lawnmower-repair shop. General agreed to rent this space for $8.50 a square foot until the sale of the business was completed and the new lease was signed.

Despite financing problems that postponed finalizing the sale and the lease, General assumed the operation of Amoriggi Sea Foods in February 1980 but did not make any personnel, equipment, or operational changes. According to the interim agreement, General paid the rent for the month of March at the increased rate. The rate for April, however, was not paid on time and on April 12, 1980, Cardi entered possession of the premises and declared a default for nonpayment under the lease.

The parties resolved this dispute by agreeing that General would pay April's rent at the increased rate. General also agreed to enter into a new lease with Cardi by May 1, 1980. The terms of this agreement were set out in a hand-written document dated April 12, 1980, and signed by Cardi as lessor, Anthony Amoriggi, Sr., as lessee, and Robbio as vice president of General Seafood Products, Ltd.

"On April 12, 1980, the Lessor, Domenico Cardi, entered the premises occupied by Amoriggi Seafood, Inc. on Park Avenue. The Lessor, exercising his right under a lease between Lessor and Lessee, Amoriggi Seafoods, Inc. to take possession upon default of the term of payment contained in said lease. The parties thereafter cured said default by payment of the required rent by Amoriggi Sea-

---

1. The defendant also filed a motion to vacate the judgment, which motion was never ruled upon by the trial justice.

2. The defendant, General Seafood Products Ltd., is not a party to this appeal.

foods. The Lessor accepted said payment and waived his right to take possession based on this default only. The Lessor's acceptance of payment in no way shall be construed as a waiver of any right the Lessor may have to take such action in the future for any and all other acts of default by the Lessee.

"The sole reason for allowing Amoriggi Seafood to effectuate said cure of default is that the Lessor and Lessee and a Third Party, General Seafood Products, Ltd., are presently in the process of negotiating a new lease to be signed by Lessor and General Seafood Products, Ltd. by May 1, 1980."

Although continued financing problems prevented General from signing the lease with Cardi, it continued to operate the business and to pay the rent. Cardi cashed the May payment by endorsing it "conditionally"; no such conditional endorsement was made upon his cashing of the June check.

By letter of June 27, 1980, Cardi's attorney advised Amoriggi and General that unless a new lease was executed by July 7, 1980, Cardi would pursue legal remedies. By a second letter, dated July 8, 1980, Cardi informed the parties that legal action would be taken after July 15, 1980, if no lease was signed by that time. During this period no new lease was signed, but General paid rent for the months of July and August. Cardi had these checks certified but did not cash them until several months later.

On July 21, 1980, Cardi commenced suit for possession of the premises, claiming that there was a default by late payment of April's rent according to the lease. On August 11, 1980, General canceled its agreement to purchase the Amoriggi business. At that time Amoriggi resumed its operation of the business. Since September 1980, Amoriggi has paid rent to Cardi under the terms of the original lease.

After a trial in District Court where judgment was entered for Amoriggi, Cardi appealed to the Superior Court for a trial de novo.[3]

On appeal the parties assign as error (1) the denial of defendant's motion for a directed verdict and (2) the granting of defendant's motion for a new trial. However, the dispositive issue before this court is whether plaintiff, in accepting the rents subsequent to May 1, waived the April default.

The plaintiff contends the issue of waiver is a question of fact to be determined by the trier of fact, in this case the jury, and that the trial justice in granting the motion for a new trial, overlooked and misconceived the evidence.

The defendant, in turn, argues that plaintiff, by accepting the rent for May and June, waived the default and that this was a question of law to be considered by the court and that the trial justice should have granted defendant's motion for a directed verdict.

The parties agree that there was a technical default of the lease upon Amoriggi's failure to pay rent by April 11, 1980. The sole issue in dispute concerns the waiver of the April 12, 1980 default.

■ As a general proposition, construction of contract terms is for the trial justice to determine as a matter of law. "Only when disputed issues of fact concerning the terms of a contract exist, should a jury become involved with questions relating to the legal effect of a written instrument." *Beckwith v. Rhode Island School of Design*, R.I., 404 A.2d 480, 483 (1979).

By its express terms, the April 12, 1980 agreement constituted a waiver of Amoriggi's default. Cardi does not dispute that a waiver existed, but he claims that it was

---

**3.** In its answer to Cardi's complaint, Amoriggi asserted, inter alia, the legal defense of waiver and an equitable defense that the court, sitting in equity, should prevent forfeiture of the lease. Amoriggi moved, pursuant to Rule 42(b) of the Superior Court Rules of Civil Procedure, for the trial court to sever the legal and equitable issues in the case. Thus, the case was presented to the jury on the sole issue of waiver. There has been no hearing or decision on Amoriggi's equitable defense.

conditional upon an agreement that General would sign a new lease with Cardi by May 1, 1980. Indeed, the April 12, 1980 document provided that the "sole reason" for the waiver was the agreement that General and Cardi were negotiating a new lease that was to be signed by May 1, 1980. Amoriggi contends that this was not a "condition" but merely a "promise" and that the April 12, 1980 waiver was complete and total.

■ A dispute over whether the parties intended the lease to be a condition upon which Cardi waived the default or whether it was merely a promise ancillary to the waiver was an issue of fact to be decided by the jury. *See Chertkof v. Southland Corp.,* 280 Md. 1, 6, 371 A.2d 124, 127 (1977) (question of waiver is matter of intent that necessarily depends on facts of case); *see also Ciambelli v. Porter,* 55 R.I. 14, 17, 177 A. 145, 146–47 (1935) (factual dispute between landlord and tenant should be submitted to jury).

■ However, in considering the evidence in a light most favorable to Cardi, the trial justice could properly find that the waiver was conditional upon the signing of a new lease with General by May 1, 1980. It is true that no form of the word "condition" is included in the document. The document states only that "[t]he *sole reason* for [the waiver is that the parties] are presently in the process of negotiating a new lease to be signed by Lessor and General Seafood Products, Ltd. by May 1, 1980." (Emphasis added.) In addition, there was testimony that Cardi had told the other parties that unless the lease was signed by May 1, 1980, that he would take possession of the premises. Thus, the trial justice could properly have found that the waiver was conditional upon the signing of the new lease with General and that failure of the condition would place the parties back in the position they had been in prior to the April 12, 1980 document.

■ Because the waiver was conditional upon the signing of the new lease, the condition was not met when the May 1, 1980 deadline passed without a new contract. Failure of the condition was a means by which Cardi's right to enter possession for the April default was revived. At that point, Cardi had the right to choose his remedies by which to proceed against Amoriggi on the default. *See Ucci v. Mancini,* 115 R.I. 182, 187, 344 A.2d 367, 370 (1975), *aff'd on other grounds,* 120 R.I. 352, 387 A.2d 1056 (1978); *cf. Jakober v. E.M. Loew's Capitol Theatre, Inc.,* 107 R.I. 104, 112, 265 A.2d 429, 434 (1970) (when one party abandons contract, other party has choice of remedies). However, instead of seeking possession of the premises subsequent to May 1, 1980, Cardi continued to receive rental payments from General.

■ We have recognized the proposition that an acceptance of rent after a default has occurred constitutes a waiver of the default. *Lenzini v. Gianetti,* 49 R.I. 174, 180, 142 A. 139, 141 (1928); *Cavanaugh v. Cook,* 38 R.I. 25, 29, 94 A. 663, 664 (1915). Indeed, "[a] forfeited lease may be revived by waiver even after entry for forfeiture." *Lenzini v. Gianetti,* 49 R.I. at 177, 142 A. at 140.

■ Although Cardi did not cash the checks for July and August[4] and cashed the May check "conditionally," he accepted and cashed the June check unconditionally. Accordingly, Cardi's actions amounted to a waiver of the condition. *Lenzini v. Gianetti,* 49 R.I. at 180, 142 A. at 141; *Cavanaugh v. Cook,* 38 R.I. at 29, 94 A. at 664. Therefore, his original waiver of April 12, 1980, became unconditional and final. Thus, the Cardi-Amoriggi lease remains in full force and effect. *See Ucci v. Mancini,* 115 R.I. at 187, 334 A.2d at 370.

■ In reviewing a motion for a directed verdict, the trial justice, and this court on

---

**4.** Cardi originally had these checks certified but did not cash them until several months later,      just prior to bringing suit.

appellate review, must examine all the evidence and all the inferences flowing therefrom in a light most favorable to the nonmoving party without considering the credibility of the witnesses or the weight of the evidence. If there is any evidence which would warrant a finding in favor of the nonmoving party or if there is evidence on which reasonable minds could differ, the jury is entitled to decide the facts of the case. *Marcotte v. Harrison*, R.I., 443 A.2d 1225, 1229 (1982); *Pray v. Narragansett Improvement Co.*, R.I., 434 A.2d 923, 926 (1981).

Therefore, after an examination of all the evidence in a light most favorable to the plaintiff, we find that the evidence establishes that there was a conditional waiver of Amoriggi's default by Cardi, which became a final, unconditional waiver upon Cardi's acceptance of rental checks after May 1, 1980. Accordingly, there was no evidence which would warrant a finding in favor of Cardi, nor was there evidence on which reasonable minds could differ. We therefore find that the trial justice erred in not directing a verdict for Amoriggi. *E.g., Marcotte v. Harrison*, R.I., 443 A.2d at 1229. Having decided this issue, we need not address Cardi's claim that the trial justice erred in granting a new trial for Amoriggi.

For the reasons stated, the plaintiff's appeal is denied and dismissed, the defendant's cross-appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court to enter a verdict for the defendant.