Manuel SOUZA et al.

v.

NARRAGANSETT COUNCIL, BOY
SCOUTS OF AMERICA.

No. 82–198–Appeal.

Supreme Court of Rhode Island.

Feb. 27, 1985.

Lori Caron Silveira, Taunton, Mass., Stephen G. Linder, Letts, Quinn & Licht P.C., Providence, for plaintiffs.

Joseph A. Kelly, S. Paul Ryan, Carroll, Kelly & Murphy, Providence, for defendant.

OPINION

SHEA, Justice.

This case comes before us on the plaintiff's appeal from a judgment of the Superior Court granting defendant's motion for a directed verdict at the close of the plaintiffs' evidence. The plaintiffs, Manuel Souza and his father, Anthony Souza, contend that the trial judge erred in granting that motion. We affirm.

The record reveals that plaintiff, Manuel Souza (Souza), was a member of Boy Scout Troop No. 99 during August of 1974. At that time, he went along with his troop to the Yawgoog Reservation, owned and operated by defendant Narragansett Council, Boy Scouts of America (Narragansett Council). The Yawgoog Reservation has three separate camps: Three Point, Sandy

Beach, and Medicine Bow. Troop 99 was joined at Yawgoog by troop 6 as prearranged by their respective scoutmasters, David Ardito (Ardito) and Ed Rainone (Rainone). The troops camped for a week at the Sandy Beach camp area.

When the troops camp at the Yawgoog Reservation, they do so primarily under the direction and leadership of their individual scoutmasters or assistant scoutmasters. The troops decide on their own programs and participate in the activities offered at Yawgoog only if they so choose. When the troops engage in their own activities, the scoutmaster is directly responsible for the safety of the scouts. If the troops or individual scouts choose to participate in activities offered at Yawgoog, they are directly supervised by employees of Narragansett Council. Activities offered at Yawgoog include swimming, archery, and riflery. Boxing is not one of the offered activities.

Ardito and Rainone, who were good friends, organized and supervised a boxing exhibition between the troops on August 16, 1974. This boxing exhibition was attended by scouts from both troops and by several adults. The only adults identified as being present at or having knowledge of the matches were Ardito, Rainone, and Michael DeLuca (DeLuca), acting scoutmaster for a troop camped at Three Point.

As scoutmasters, Ardito and Rainone were not employed by Narragansett Council. Scoutmasters are selected by the sponsoring organization, typically a church or a PTA that is chartered by the National Office, Boy Scouts of America. Troop 99 was sponsored by the Federal Hill House of Providence, and troop 6 was sponsored by the Meshanticut Volunteer Fire Company.

DeLuca, who was off duty at the time, was the only employee of Narragansett Council identified by name as having been present at the matches. DeLuca was hired by Narragansett Council as an acting scoutmaster for the summer of 1974. In the event that a troop arrived at the reservation without a scoutmaster or an assistant scoutmaster, his duties called for him to serve the visiting troop in that capacity.

After the completion of approximately five boxing matches, plaintiff Souza's match began. Although no blows were struck, shortly after the match began, Souza injured his left knee either by twisting it or by falling on it. He was immediately taken to the health lodge at Yawgoog where he was examined by a doctor and then transported to Rhode Island Hospital.

Alleging that Narragansett Council was negligent for failing to prevent the boxing matches, plaintiffs instituted this civil action to recover damages for personal injuries suffered by Souza during his participation in a match. At trial, plaintiffs contended that the boxing matches constituted a dangerous condition from which defendant had a duty to protect its campers. The plaintiffs argued that defendant breached the duty of care that it owed to Souza through its employees' failure to stop the boxing match. According to plaintiffs, defendant's failure to act constituted actionable negligence.

At the close of plaintiffs' case, the trial justice granted defendant's motion for a directed verdict on the ground that plaintiffs had failed to present sufficient evidence to warrant submission of the case to the jury. The trial justice concluded that there was no evidence from which a jury could conclude that any employee of defendant either knew of or was present at the boxing matches and had actual authority to stop them.

■ In reviewing the trial justice's decision on a motion for a directed verdict, we are bound by the same rules that govern the trial justice. We examine all the evidence in a light most favorable to the nonmoving party without considering the weight of the evidence or the credibility of the witnesses. We draw from that evidence only those reasonable inferences that support the nonmoving party's position. If such examination reveals issues upon which reasonable minds could differ, then the motion for directed verdict should be

denied and the jury should be left to determine the issues of the case. *Marcotte v. Harrison*, R.I., 443 A.2d 1225, 1229 (1982). With these considerations in mind, we have reviewed the evidence and conclude that the trial justice's ruling was proper.

"It is axiomatic that a corporation is liable only for those torts committed by agents acting within the scope of their authority or in the course of their employment." *Brimbau v. Ausdale Equipment Rental Corp.*, 119 R.I. 14, 26, 376 A.2d 1058, 1064 (1977). "Moreover, the burden of proving such authority or employment is on the one who sues a corporation." *Id.* Thus, in order to avoid a directed verdict, plaintiffs must show that some agent of defendant, who had actual authority to prohibit boxing, knew that these particular boxing matches were about to occur or were in the process of occurring and that it was negligent for that agent not to prohibit boxing under the conditions and circumstances that prevailed at that time.

Our search of the record in this case has revealed no evidence that there were persons with such authority present at the boxing matches. DeLuca was the only employee of defendant identified by name as having been present at the matches. At the time of the matches, he was acting scoutmaster for a troop in another camp and was at the scene of the boxing matches, not as an employee of Narragansett Council, but on his own time. Even if DeLuca had been present while on duty, as acting scoutmaster he was responsible only for the boys in his troop, not for troop 99 and troop 6, for which Ardito and Rainone were responsible. Since the evidence does not establish that DeLuca had any responsibility or authority whatsoever in respect to the camp as a whole, no inference can be made that he had the authority or the responsibility to act in this situation.

Moreover, although it is true that Narragansett Council offers a number of programs available to all scouting troops, the record indicates that the scoutmaster and his troop can organize their own distinct programs. In this regard it is worth noting that boxing was not a program offered by the Narragansett Council at Yawgoog and that the two scoutmasters, Ardito and Rainone, and their people in troops 99 and 6, acted on their own in deciding to have a boxing exhibition between the boys in friendly competition.

Finally, plaintiffs point out that their witnesses testified that there were adults and staff members present at the boxing match who belonged neither to troop 99 nor to troop 6. They contend that the trial justice erred in failing to draw the reasonable inference that at least some of these persons were employees of defendant. We disagree.

Proof by inference must be based on reasonable inferences drawn from facts in evidence and not conjecture. *Hill v. State of Rhode Island*, 121 R.I. 353, 356, 398 A.2d 1130, 1132 (1979); *Nahigian v. Belcher & Loomis Hardware Co.*, 66 R.I. 194, 18 A.2d 388 (1941). The plaintiffs engage in such conjecture in drawing from the vague statements of its witnesses the inference that some of the unidentified persons at the match were employees of defendant. Even if we were to make such an inference for argument's sake, plaintiffs would still not have established their case because they failed to offer "evidence which shows or which warrants [an] inference that the servant, while doing the wrongful act, was engaged in the work which the employer expressly or impliedly hired him to do." *Haining v. Turner Centre System*, 50 R.I. 481, 483, 149 A. 376, 378 (1930).

Since we agree with the trial justice that the evidence does not demonstrate that there were any employees of the defendant present at the matches who had the authority to stop the matches, we need not address the merits of the other reasons he discussed in support of his decision.

The plaintiffs' appeal is denied and dismissed, the judgment appealed from is af-

firmed, and the papers of this case are remanded to the Superior Court.