**Joseph G. PISCITELLI et al.**

**v.**

**DeFELICE REAL ESTATE, INC. et al.**

**No. 84–345–Appeal.**

Supreme Court of Rhode Island.

July 11, 1986.

Joseph C. Salvatore, Providence, for plaintiff.

Milton Stanzler, Abedon, Michaelson, Stanzler & Biener, Providence, Paul K. Sprague, Warwick, for defendant.

OPINION

MURRAY, Justice.

This case involves an appeal by DeFelice Real Estate, Inc. (DeFelice), defendant, from a Superior Court jury verdict rendered in favor of Joseph G. Piscitelli (Piscitelli) and his wife, Marie, plaintiffs.[1] The issue before us evolved from the following pertinent facts.

In November 1979 plaintiffs listed their property at 95 Hyde Street, Cranston, Rhode Island, for sale with defendant through one of its listing agents, Mario Lindia (Lindia). In April of 1979 DeFelice secured Carmine Vargas and Michael Rywalt as prospective purchasers of plaintiffs' property. On April 20, 1979, these potential buyers and plaintiffs entered into a purchase-and-sale agreement regarding the premises. An examination of this document reveals that the purchase price of the property was $54,500 and that a closing date of June 18, 1979, was contemplated. In addition, this agreement was contingent

---

1. The record indicates that Carmine Vargas and Michael Rywalt were also defendants in the trial below. DeFelice, however, was the only defendant to appeal from the judgment rendered.

upon the buyers' success in obtaining 90–percent financing at a reputable lending institution. Sometime later the prospective purchasers were denied financing by Columbus National Bank. Undaunted by their initial failure, the buyers applied for a mortgage at another lending institution. As a result of this new application for financing, on May 31, 1979, the parties entered into a second purchase-and-sale agreement, the terms of which are identical to the previous agreement except that the closing date had been extended to June 30, 1979. Following the execution of this second agreement, DeFelice retained the original copy of the instrument, while plaintiffs, Old Stone Bank and the prospective buyers received duplicate carbon copies of the document.

At the end of June 1979, Old Stone Bank conducted an inspection of plaintiffs' premises in connection with the mortgage application submitted by Vargas and Rywalt. Thereafter, in August of 1979, nearly two months subsequent to the agreed-upon closing date of June 30, 1979, as set forth in the second purchase-and-sale agreement, Old Stone Bank approved the prospective purchasers' application. A short time later, on or about August 29, 1979, Lindia telephoned plaintiffs to notify them of the approval and to set up a tentative closing date. Piscitelli, much to Lindia's dismay, informed him that he and his wife had on their own already agreed to sell their property to a Joseph Caruolo. At this juncture, there is considerable disagreement between Lindia and Piscitelli as to what transpired next in the conversation. Piscitelli testified that he told Lindia that he was no longer obligated to sell his property to the purchasers procured by DeFelice since the second purchase-and-sale agreement had expired two months earlier. At this point, according to Piscitelli, he and the agent became embroiled in a heated argument during the course of which Lindia accused him of trying to "screw him out of his commission." Immediately following this accusation, Piscitelli testified that Lindia threatened to put a lien upon plaintiffs' property, whereupon Piscitelli hung up on him.

In contrast to Piscitelli's version of the telephone conversation, Lindia denied that he had threatened to put a lien on plaintiffs' property. Lindia further alleged that he did not argue with Piscitelli on the phone. Subsequent testimony by Lindia discloses that he cautioned Piscitelli, upon being informed of the impending sale to Caruolo, that since the May 31, 1979 agreement was still binding plaintiffs would be subject to legal action by defendant's prospective purchasers if the Piscitellis did not consummate the sale with Vargas and Rywalt.

Notwithstanding the factual discrepancies concerning the substance of the above discourse, the record indicates that on August 30, 1979, the day following the telephone conversation between Piscitelli and Lindia, a reduction copy of the May 31, 1979 purchase-and-sale agreement was recorded in the Land Evidence Records of the City of Cranston. Lindia and the other real estate agents associated with DeFelice at the time in question testified that they had not recorded the agreement, nor had they instructed the prospective purchasers to do so. Apparently Lindia and Barbara Crocker, a selling agent for DeFelice, attempted to set up two closings in mid-September 1979. Vargas and Rywalt attended both closings, but the Piscitellis failed to show up. At the end of September Vargas and Rywalt purchased another home in Cranston.

Subsequently, realizing that the recorded agreement effectively placed a lien on his property, Piscitelli phoned Thomas DeFelice, president of the defendant corporation, and asked him about removing the lien. According to Piscitelli's testimony, Mr. DeFelice allegedly acquiesced in his request to remove the lien. Piscitelli further testified that Mr. DeFelice promised to look into the matter and to get in touch with him later. At no time during the course of this discussion did Piscitelli, according to his

own testimony, inform Mr. DeFelice of the argument that he had had with Lindia or the alleged threats made therein by the agent. Thereafter an attorney representing DeFelice called Piscitelli and advised him to hire an attorney to remove the lien.

Subsequently, although plaintiffs eventually hired an attorney to assist them in removing the lien, the recording of the encumbrance had in the meantime precluded them from selling the property to Caruolo, the buyer whom they had procured on their own. As a result plaintiffs filed a declaratory judgment action against defendant, seeking to remove the May 31, 1979, purchase-and-sale agreement from the Land Evidence Records of the City of Cranston. In conjunction with this action, plaintiffs sought a declaration that the alleged recording of the agreement by DeFelice was wrongful, pursuant to which they requested damages and costs. On March 8, 1984, a jury trial on this matter commenced. Four days later, on March 12, 1984, the trial judge, over defendant's objection, granted plaintiffs' motion to amend their complaint to include a count for slander of title as well as a claim for punitive damages.[2] At the conclusion of trial defendant presented a motion for a directed verdict. The trial judge, however, denied the motion and submitted the case to the jury. On March 16, 1984, the jury returned a verdict in plaintiffs' favor. A review of the interrogatories answered by the jury reveals that it found that Mario Lindia did in fact record the May 31, 1979 purchase-and-sale agreement. The jury also determined, in another response to these same interrogatories, that Mario Lindia, in re-

cording the agreement, was acting within the scope of his employment as an agent for DeFelice. Accordingly DeFelice, as Lindia's principal, was found liable on the slander charge. As a result the jury awarded plaintiffs $6,226.54 in compensatory damages and $40,000 in punitive damages. Following DeFelice's unsuccessful motion for new trial, defendant appealed to this court, seeking relief.

One of the arguments raised by DeFelice on appeal is that the trial justice erred in denying its motion for a directed verdict. In reviewing the trial justice's decision on a motion for directed verdict, we are mindful that this court is bound by the same rules that govern the trial justice. *Souza v. Narragansett Council, Boy Scouts of America*, 488 A.2d 713, 714 (R.I.1985). We examine all the evidence in a light most favorable to the nonmoving party without considering the weight of the evidence or the credibility of the witnesses. *AAA Pool Service & Supply, Inc. v. Aetna Casualty and Surety Co.*, 479 A.2d 112, 115 (R.I. 1984). From that evidence we draw only those reasonable inferences that support the nonmoving party's case. *Souza*, 488 A.2d at 714. If there is any evidence that would warrant a finding in favor of the nonmoving party or if there is evidence upon which reasonable minds could differ, then the motion for a directed verdict should be denied and the jury should be left to determine the issues of the case. *Cardi v. Amoriggi Sea Foods, Inc.*, 468 A.2d 1223, 1227 (R.I.1983).

Focusing upon the issue at hand, we note that it is well settled in this jurisdiction

---

**2.** The record of the proceedings indicates that on March 13, 1981, a default judgment was entered against DeFelice granting plaintiffs' declaratory action in full. Subsequently, however, on September 22, 1982, DeFelice successfully moved to vacate the default judgment. Although it is unclear from the record, it appears that the order to vacate only pertained to the issues of defendant's liability and damages. As far as we can determine, the order to vacate did not reinstate the lien in question. As a result, the only issues before the jury were defendant's liability and damages, both of which were more

sharply brought into focus when plaintiffs amended their complaint to include a slander count. This determination of the proceedings' chronology is unequivocally supported by the trial judge's following assessment of the situation:

"The cloud on the title of the Piscitellis was eventually removed by a judgment of this court in this case which was entered on March 13, 1981. So the questions or issues to be determined by the fact finder in this case are were—is, rather—were the essential elements of an action for slander of title."

that a corporation is liable only for the tortious conduct committed by its agents while acting within the scope of their authority. *Brimbau v. Ausdale Equipment Rental Corp.*, 440 A.2d 1292, 1295 (R.I. 1982). In addition the burden of proving such authority rests upon the party who sues the corporation. *Souza*, 488 A.2d at 715.

■ From a careful and thorough examination of the record before us, it is our considered judgment that assuming Lindia recorded the May 31, 1979 agreement, there is no evidence to support a finding in plaintiffs' favor that he was acting within the scope of his authority as a listing agent for DeFelice when he did so. The record indicates that during his nine-month period of employment at DeFelice, Lindia worked on a strict commission basis, receiving only a 1½–percent commission for the sale of each house that he had listed. Although DeFelice provided him with office space and the use of its stationery and telephones, he received no other benefits from the defendant corporation. His business card, which he carried at the time of his involvement with plaintiffs' property, identified him as a salesman for DeFelice. In regard to the aborted sale of the Piscitellis' home, Lindia was merely a listing agent whose primary responsibility was securing plaintiffs' signatures on a multiple-listing-service application. Taking into account the above enunciated facts, we find that there is simply no evidence to suggest that Lindia had the authority, either express or apparent, to record the second purchase-and-sale agreement. Significantly, the record discloses that when Piscitelli and Lindia met to discuss the terms of the listing application, Piscitelli requested that Lindia sign an affidavit that would require DeFelice to hold an open house for the term of the listing. However, before Lindia could agree to sign the affidavit, he had to call the manager of DeFelice to secure his approval. Clearly, if Lindia did not have the authority to sign an affidavit requiring an open-house listing for the Pisci-

telli property, then it cannot be reasonably inferred that he had the authority to carry out the far more significant act of recording the agreement.

■ The plaintiffs argue in their brief that even if Lindia did not have the authority to record the instrument, DeFelice subsequently ratified the unauthorized recording. Ratification may be established by any conduct of the purported principal manifesting that he consents to be a party to the transactions or by conduct, justifiable only if there is ratification. *Newport Oil Corp. v. Vito Bros., Inc.*, 454 A.2d 706, 708 (R.I.1983). In this jurisdiction we recognize the doctrine of ratification where a principal has knowledge of the facts and accepts a benefit even when the act of the agent may have been unauthorized. *Beckwith v. Rhode Island School of Design*, 122 R.I. 93, 101, 404 A.2d 480, 485 (1979). The plaintiffs assert that Piscitelli's telephone conversations with Mr. DeFelice and his attorney and defendant's subsequent inaction in failing to remove the lien constitute ratification of the unauthorized recording. We find however that this evidence *alone* is wholly insufficient to substantiate a reasonable inference that DeFelice ratified the unauthorized recording. *Cf. Brumbaugh System, Inc. v. Providence Live Poultry Co.*, 47 R.I. 39, 41, 129 A. 734, 735 (1925) (evidence of defendant's conduct sufficient to avoid directed verdict and to warrant submission of ratification issue to jury). At this point DeFelice as a matter of law would not have had standing to cancel the recording of the contract.

From our above analysis we are compelled to find that there is no evidence from which a reasonable inference can be drawn that would warrant a finding in the plaintiffs' favor on the above agency issues. As a result the trial judge committed error in denying defendant's motion for a directed verdict. In light of this determination, we shall not address the other issues raised by defendant.

Accordingly the defendant's appeal is sustained. The judgment appealed from is

reversed, and the papers in the case are remanded to the Superior Court.