Richard J. DYER in His Capacity as
Trustee of 19 Blue Beverage
Realty Trust

v.

RYDER STUDENT
TRANSPORTATION SERVICES, INC.

No. 99–384–Appeal.

Supreme Court of Rhode Island.

Jan. 30, 2001.

Matthew T. Oliverio, Providence, for Plaintiff.

Joseph A. Keough, Jr., Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The parties appeared before this Court on December 11, 2000, to show cause why the issues raised by this appeal should not be summarily decided. The defendant, Ryder Student Transportation Services, Inc. (Ryder), has appealed from a judgment entered in favor of the plaintiff, Richard J. Dyer, in his capacity as Trustee of 19 Blue Beverage Realty Trust (the trust). After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown. Therefore, the case will be decided at this time.

This dispute revolves around property located at 643 Narragansett Industrial Park Drive in Pawtucket, owned and managed by the trust. On July 30, 1997, the

trust entered into a commercial lease (lease) with Ryder for the above-mentioned property. The lease term was September 1, 1997, through June 30, 1998. The lease contained an "Options to Renew" provision (renewal provision) that set forth the extension schedule and provided that "[u]pon the expiration of the lease term * * * Tenant shall have the option[,] upon not less than ninety (90) days written notice[,] to extend this lease * * *." Pursuant to the extension schedule, the lease could be renewed for up to three two-year periods.[1]

As of March 1998, Ryder was engaged in continuing contract negotiations with the City of Pawtucket (city) for the 1998–1999 school year. On March 30, 1998, cognizant that the original lease was approaching the termination date and not desiring to be bound by a lease in the event that the city selected a different vendor, Ryder made a written request to the trust to extend the first option-to-renew-period to April 30, 1998. Ryder assured the trust that it would be able to make a decision concerning renewal within the extended period. The trust agreed to the extension request.[2]

On April 30, 1998, still without a contract settlement, Ryder submitted another written request to the trust, asking that the renewal provision be extended an additional forty-five days, to June 15, 1998. In addition to this request, Ryder informed the trust that it would be willing to exercise the two-year option provided that a termination clause was added that would allow Ryder to terminate if it was not awarded a contract. The trust never responded to this request.

On May 5, 1998, Ryder was notified by telephone that the trust would not renew the lease, and further, that Ryder should vacate the premises upon expiration of the lease term on June 30, 1998. Ryder considered the telephone call to be insufficient notice to vacate the premises, and indicated in writing that Ryder was exercising the renewal provision. Ryder informed the trust that it would not vacate on June 30, 1998, and that any attempt to evict Ryder would be treated as a breach of the lease agreement.

On July 20, 1998, the trust filed a trespass and eviction action in the Sixth Division District Court pursuant to Ryder's refusal to vacate on June 30, 1998. During this time, the trust, as permitted by G.L. 1956 §§ 34–18.1–16[3] and 34–18.1–18,[4] accepted rent checks from Ryder for the

---

1. The schedule set forth three separate renewal dates: July 1, 1998, to June 30, 2000; July 1, 2000, to June 30, 2002; and July 1, 2002, to June 30, 2004. A rental increase was included with each renewal period.

2. The parties have agreed that this extension agreement was in writing, but no document is contained in the record.

3. General Laws 1956 § 34–18.1–16 provides:

"**Payment of rent on stay of execution.**— Whenever the issuance of an execution for the recovery of real property covered by this chapter, or the service of an execution, is stayed by order of the court or by the operation of law, the stay shall be conditioned upon the payment, by the defendant or defendants to the plaintiff or plaintiffs in such actions, of sums of money equal to the rent for the premises, which sums shall be paid at the times and in the amounts as rent would be due and payable were the action

not then pending. The acceptance of moneys shall not constitute a waiver of the right of the plaintiff or plaintiffs to obtain possession of the premises, nor shall the receipt thereof be deemed to reinstate the defendant or defendants as a tenant."

4. Section 34–18.1–18 provides:

"**Payment of rent during pendency of appeal.**—Whenever an action for the recovery of real property covered by this chapter shall be pending on appeal in the superior or supreme court, the defendant or defendants in the action shall pay to the plaintiff or plaintiffs sums of money equal to the rent for the premises, which sums shall be paid at such times and in such amounts as rent would be due and payable were the action then not pending. The acceptance of this money shall not constitute a waiver of the right of the plaintiff or plaintiffs to obtain possession of the premises, nor shall the receipt thereof be deemed to reinstate the defendant or defendants as tenants."

month of July.[5] The trust prevailed and was awarded possession of the premises.

Subsequently, on August 31, 1998, Ryder filed an appeal with the Superior Court. On February 23, 1999, and February 26, 1999, a nonjury trial was held in Providence County Superior Court. On June 7, 1999, the trial justice issued a decision granting the trust possession of the premises.

In reviewing a decision by a trial justice sitting without a jury, "we extend deferential consideration to the findings made by a trial justice and will not disturb those findings unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong." *Brunelle v. Town of South Kingstown,* 700 A.2d 1075, 1080 (R.I.1997) (citing *Wickes Asset Management, Inc. v. Dupuis,* 679 A.2d 314, 317 (R.I.1996)). To effectively exercise an option to renew, the tenant must strictly comply with the notice provisions of an option contract. *See Smith v. Cohen,* 685 A.2d 268, 269 (R.I.1996) (option to renew must be exercised in accordance with the lease requirements).

The defendant contended that the May 5, 1998 telephone call informing Ryder that the lease would not be renewed constituted improper and insufficient notice under the lease. Therefore, defendant asserted that its notice of renewal combined with the trust's subsequent cashing of the July rent check without a restrictive endorsement operated to revive the renewal option and subsequent renewal period. The parties do not dispute that Ryder was granted an extension until April 30, 1998, and received no response from the trust concerning its second request for a renewal extension. In fact, as Ryder stated, it received a phone call that indicated the trust considered the lease terminated as of June 30, 1998, and that Ryder should vacate the premises by that time. Even assuming, as Ryder contended, that the phone call constituted insufficient notice to

vacate under the lease, Ryder's notification to exercise the option to renew was not communicated to the trust until thirteen days after the initial renewal extension had expired. Once the extended renewal period had expired, absent an additional express agreement to extend the renewal notice period by the trust, Ryder became a holdover tenant as of the date the lease terminated and was without the power to invoke the renewal option in the lease. The trust's silence as a response to Ryder's second renewal extension request cannot be construed as acceptance, but rather, is to be viewed as an implicit denial of such request. *See Kenney Manufacturing Co. v. Starkweather & Shepley, Inc.,* 643 A.2d 203, 208 (R.I.1994) (silence does not constitute acceptance of an offer unless a prior course of dealings between the parties would make such a construction reasonable).

Moreover, acceptance of the rent after the expiration of the lease term did not constitute a waiver of the notice provisions of the lease. *See Hudson Oil Company of Mobile, Inc. v. McLeod,* 424 F.2d 1269, 1271 (5th Cir.1970) (waiver "must be manifested in some unequivocal manner"). Although Ryder remained in possession and forwarded a check for the July rent, it was not deposited until early August 1998. Based upon the facts presented, we agree with the findings of the trial justice that "[the trust's] actions signify that it identified Ryder as a holdover tenant," and acceptance of the rent did not constitute a waiver of the notice provisions of the lease.

Ryder incorrectly relies on this Court's decision in *Cardi v. Amoriggi Sea Foods, Inc.,* 468 A.2d 1223 (R.I.1983) to support its argument that the trust's acceptance and deposit of the July rent check constitutes a waiver of the renewal-period expiration. In Cardi, the lease at issue contained a provision providing that the failure of Amoriggi to pay rent within ten days of the first of the month would

5. The check, issued on June 25, 1998, was not deposited by the trust until August 5, 1998.

constitute a default under the lease. *Id.* at 1224. Amoriggi failed to pay the April rent before April 11, 1980, and thus, technically defaulted on the lease. *Id.* Thereafter, Amoriggi made payment to Cardi of the required rent, and Cardi accepted, thus waiving his right to take possession in order to negotiate a new lease between Cardi, Amoriggi and a third party. *Id.* at 1225. The third party experienced financing problems, but nonetheless continued to operate the business and pay the required rent to Cardi. Cardi cashed the third party's May rent check "conditionally," but made no conditional endorsement on the June check. *Id.* Significantly, throughout this dispute, the lease never terminated by its own terms. We held that an unconditional acceptance of a rent check after a default has occurred constitutes a waiver of the default. *Id.* at 1226.

In the case now before us, we are not presented, as we were in Cardi, with a default of a lease provision, but rather with a lease that had terminated by its own terms. The trust expressly granted Ryder an extension for the renewal period through April 30, 1998. Pursuant to this extension, and without any notification by Ryder, the extension for the renewal period terminated on May 1, 1998, and ceased to exist. Therefore, it could not be revived through the acceptance of a rental payment or otherwise absent an express agreement between the parties. Ryder's failure to renew by April 30, 1998, created a holdover tenancy by operation of law after June 30, 1998, and any subsequent rent accepted by the trust was accepted pursuant to that new tenancy, not the original expired lease.[6]

Ryder failed to strictly comply with the terms of the renewal provision in the lease. As such, the lease terminated, and once Ryder refused to vacate the premises on June 30, 1998, the trust was within its rights to consider Ryder a holdover tenant and accept rent on that basis. Therefore, we conclude, as did the trial justice, that the lease terminated by its own terms on June 30, 1998, and Ryder became a holdover tenant from that date forward. It is clear to this Court that Ryder delayed simply because it wanted to avoid extending the lease if it was not awarded a contract by the city. Unfortunately for Ryder, this was a gamble that it lost.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment is affirmed and the papers in the case may be remanded to the Superior Court.

---

**6.** Additionally we note that the July rent check, according to the bank cashing date, was not cashed until August 5, 1998, approximately two weeks after the July 21, 1998 filing of the complaint in this action.