[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on Plaintiff Carcieri's complaint to evict Defendant, Enterprise, from the premises owned by Plaintiff Carcieri at 1871 Mineral Spring Avenue, North Providence, Rhode Island, pursuant to 34-18.1 of the General Laws of Rhode Island, 1956, as amended.
After an original trial in the District Court wherein that Court found for the defendant, Plaintiff claims an appeal to this Court for a de novo trial.
The essential facts are that Plaintiff leased its premises to Defendant for a five-year period with options by Defendant to renew for two added five-year terms. The critical issue is whether the Defendant exercised its option to renew for the second five-year term in accordance with the lease, and whether Plaintiff sent a notice of termination of the first term within the time frame set out in it. The parties have submitted a joint statement of undisputed facts numbered 1 thru 16 which are adopted by the Court and incorporated in this decision as Exhibit A.
Plaintiff argues that the lease was signed on October 28, 1997, with a commencement date of November 1, 1997 and termination date for the original term of October 31, 2002, and since the Defendant failed to exercise the option for a second term "not later than 3 months prior to the expiration date," that is July 31, 2002,[1] the option could not be exercised. While there is confusion as to the term "commencement date," Plaintiff argues that there are a number of factors that require the Court to accept its position:
 1. Under § 2.1 of the lease the parties wrote the dates "November 1, 1997" and "October 31, 2002" as the term for commencing and ending the lease.
 2. The lease called for annual rental increases at the beginning of the second and fourth years of the lease, and Defendant began making those increased payments on November 1, 1998 and November 1, 2000, signifying its understanding that the commencement date was in fact November 1, 1997.
 3. While § 20.14 of the lease indicated that as soon as practicable, the parties shall enter into an agreement stipulating the actual commencement date and termination date of the original and each extended term, in fact this was never done.
 4. Defendant's argument that the actual commencement date was the earlier of the Defendant's commencing business, or ninety (90) days after the Plaintiff delivered the premises with its work completed, is negated by the failure of the parties to prepare a supplemental agreement and its only purpose therefore was to verify the fact that the Defendant did not have to pay rent for a ninety (90) day grace period following the execution of the lease.
 5. The tolling provision found in § 20.12 of the lease does not apply when the first ninety (90) days were rent free and thus abated, but only in those situations where the rent is abated after the lease began and then recommenced.
 6. Finally, Plaintiff argues that any acceptance of rent after its notice of termination does not waive its right to proceed with this action.
On the other hand, Defendant contends that there are significant factors supporting its position:
 1. While § 2.1 used the words "commencing" and "terminating," § 2.2 defined the "commencement date" as the earlier of the dates on which the tenant shall commence to conduct business or ninety (ninety (90)) days after the Landlord delivers the demised premises, and, since Defendant started doing business in mid March 1998, the five year term ran from that date, thus making Plaintiff's notice of termination of August 1, 2000 premature.
 2. Since § 4.1 refers to the first 3 months of the first years rent being abated and § 20.12 reads that "when rent is completely abated the term of this lease shall be extended for the period of such abatement," it is logical to conclude that the term of the lease was extended by 3 months.
 3. On April 25, 2003 Plaintiff notified Defendant that if Defendant's exercise of the option was correct, then the rent was increased by $100 per month in accordance with the terms of the first year of the option. In so doing, Plaintiff acknowledged that its notice to terminate the lease had been premature and that by notifying, demanding and accepting the added $100 Plaintiff had acknowledged the Defendant's proper exercise of the option to renew and had waived any right to now seek eviction.
There is no doubt that while the parties made every effort to include all the terms and conditions of their agreement in the lease, either because of ambiguous language, or the failure of the parties to complete the terms of the lease, or their outright mistakes, we are left with the present litigation.
In trying to interpret these ambiguities and find the intent of the parties, this Court must view the lease as a whole trying to give meaning to all of its language in a manner that is consistent. In this regard, the Court gives greater weight to the arguments presented by the Plaintiff. For whatever reason, the parties never executed the supplemental agreement of § 20.14 setting forth the "actual commencement date." They did howeverwrite in the dates "November 1, 1997" and "October 31, 2002" for the commencing and ending of the term of the lease in § 2.1. "It is a well-settled rule of law that if there is a repugnancy between the printed and the written promises of the contract that the written will prevail. It is presumed to express the specific intent of the parties. See Delhomme Industries v. HoustonBeechcraft, Inc., 669 F.2d 1049, 1059 n. 25 (5th Cir. 1982). Likewise, any dispute as to the actual dates of the lease are clarified by the parties treating the rental increase for the second and fourth years of the lease as being due on November 1, 1998 and November 1, 2000. While Defendants attribute this to a mistake on its part, the mistake did not happen once but twice, the last one as the lease was 80% complete. "Where an agreement involves repeated occasions of performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement. Restatement (Second) Contracts § 202. "Given that the purpose of judicial interpretation is to ascertain the parties' intentions, the parties own practical interpretation of the contract — how they actually acted, thereby giving meaning to their contract during the course of performing it — can be important aid to the Court . . . Courts give great weight to the parties practical interpretation." 11 Williston,Contracts § 32:14 (4th ed. 1999). Because of the subsequent conduct of the parties the only logical meaning that can be given to § 2.2 of the lease is that whenever it started, Defendant was to be given ninety (90) days free rent. While § 4.1 refers to the first 3 months rent being abated and § 20.14 states that whenever rent is completely abated "the expiration date of the lease shall be extended for the period of such abatement," this unfortunate choice of confusing language can best be explained by the portion of § 20.12 stating that monthly installments of the annual rent shall recommence and thereafter continue. By use of the word recommence, the parties meant to limit § 20.12 to those situations where there was an interruption in the lease, perhaps caused by a casualty loss, and not the free rent abatement referred to in § 4.1.
Since the termination date of the lease was October 31, 2002, and the Defendant was 22 days late in attempting to exercise its option, Defendant forfeited its right. A tenant must strictly comply with the notice provision of an option contract. SeeDyer v. Ryder Student Transportation Service, Inc.,765 A.2d 858, 860-61 (R.I. 2001). After this point, Defendant was no more than a holdover tenant, and any rent paid to Plaintiff did not waive Plaintiff's right to proceed to evict [See 34-18.1-16 of RIGL "the acceptance of money shall not constitute a waiver of the Plaintiff's right to obtain possession."] While § 20.1 indicates that a holdover tenant shall pay the same annual rental in affect during the last year of the term, nothing required Defendant to pay this added amount other than the fact that it might substantiate its case in the event of a future eviction proceeding.
Accordingly the Court makes the following Findings of Fact and Conclusions of Law:
 1. The actual commencement and termination dates of the lease were November 1, 1997 and October 31, 2002.
 2. The parties by their conduct in not executing the Supplemental Agreement of § 20.14 — and by paying and accepting the rent increases on November 1, 1998 and November 1, 2000, indicated their true intent to treat those dates as the actual starting and ending dates of the lease.
 3. While rent for the first ninety (90) days of the lease was abated, the only abatements that would justify an extension of the terms of the lease, were those that occurred after the lease had started and then recommenced.
 4. Since the termination date of the lease was October 31, 2002, Defendant's notice to exercise the option on August 22, 2002, was well past the deadline of July 31, 2002, and cannot be honored.
 5. The Defendant by failing to exercise its option became a holdover tenant at will and any rent accepted by Plaintiff did not waive its right to proceed with eviction.
 6. Even though the lease called for the same rent for a holdover tenant, 6. the additional rental paid by Defendant, was nothing more than an attempt to substantiate its claim to have timely exercised its option.
Accordingly, judgment shall enter for the Plaintiff for possession of the premises plus all provable costs.
An Order shall issue consistent with this decision.
[1] Defendant did so on August 22, 2002.